*403 Statement of the Case.
MONROE, C. J.
Plaintiff sues to be decreed the owner of a certain tract of land in the parish of Natchitoches, called “Lot No. I,” on the right bank of Old river, containing 238.93 acres. He alleges that he acquired that lot by inheritance from his uncle, Marco Giovanovieh, to whom it was adjudicated at a sheriff’s sale, made under executory process issued in the matter of Marco Giovanovieh v. J. Ernest Breda, in foreclosure of a mortgage executed by Breda on September 8, 1888; that Breda acquired the property by purchase from Henry Hertzog, as per act before Barlow, deputy clerk and notary, December 20, 1887; that Hertzog acquired it from A. H. Lecomte by act of date November 13, 1875; and that Lecomte acquired it in a partition, by notarial act of date November 9,1875, between him and his coheirs, of property inherited from their parents, Henry Hertzog, Sr., and wife; that the act of mortgage by Breda and the petition and other documents in the foreclosure proceeding identify the property therein sold, and intended by Breda and Giovanovieh to be sold, ’ as part of that acquired by Breda from Henry Hertzog on December 20, 1887, but that the property is, therein described as lot 2, on a plat of survey made by John Deegan, surveyor, and filed with the act of partition, and that lot 1 on said plat was part of the property so acquired, whereas lot 2 was not; that lot 2 never belonged to Breda, but at the date of the mortgage executed by him belonged to Mrs. Laura Hertzog Greneaux, who had acquired it from Henry Hertzog, Jr., in 1S85, and had continued to own it until, in 1892, she sold it to W. W. Curry; that the petition for executory process, In re Giovanovich v. Breda, and the order of the judge, were prepared by Breda, who waived notice of seizure and consented to the issuance of the writ without formality, though the petition was signed by Scarborough & Carver, and the order by the judge, and that -the sale amounted to a conventional sale by consent; that Breda died in 1914, leaving a widow and six children, who are named; that after the sale in question he made no claim to lot 1, nor have his widow or children done so until now. The prayer is that the widow and heirs be cited, and that it be decreed that the property acquired by Breda from Hertzog and by him mortgaged to Giovanovieh and sold under the foreclosure was lot 1, according to the Deegan plan, and not lot 2.
Defendants filed certain exceptions, which were overruled, and, reserving their rights in that respect, answered, denying that plaintiff is entitled to. be decreed the owner of the property claimed by him, and alleging that it belongs to them. They allege that, plaintiff’s, author in title having caused certain property to be seized and sold, and having become the adjudicatee thereof at a judicial sale, plaintiff, claiming under him, cannot now be heard to allege error of description, and to assert title to other property as having been thus acquired; that the claim is stale; that such error, if error there were, must be shown to have been mutual, which cannot be done, as Marco Giovanovieh was not a party to the act of mortgage under which the property was sold, he having merely become the holder and owner, in course of trade, of the note, to secure the payment of which the mortgage was executed.
The facts disclosed by the evidence, as we find them, are as follows:
Henry Hertzog, Sr., and wife died at some time prior to November -9, 1875, leaving four major children and heirs, viz. Ambrose H. Lecomte (whose name had been changed from Hertzog); Henry Hertzog, Jr.; Marie Elcey Hertzog, wife of J. Ernest Breda; and Laura Hertzog (who afterwards became Mrs. Leon Greneaux); and they upon the day mentioned effected a partition of certain immovable property inherited by them as heirs *405 of their parents, consisting of a plantation (in two tracts), a tract of land called the “Chevalier Place,” and a tract variously called the “Congress,” “Woods,” and “cypress” tract (and which will here be called “cypress tract”). The plantation lay upon both sides of Cane river, and partly on the right (descending) bank of Old river, of which Cane river appears to be an effluent, or continuation. The experts and surveyor, who were selected to arrange the “lots,” or portions, to be drawn by the four heirs, began by dividing the four tracts, of which the property consisted, into four lots each; the lots in each tract being of .equal acreage, and being numbered, respectively, 1, 2, 3, 4, as follows, to wit;'
The tract lying upon the left, descending, bank of Cane river, which had been known as the “Morgan Place” (called by the Hertzogs the “Home Place”), consisting of 30S.96 acres, was divided into lots 1, 2, 3, 4, containing each 79.74 acres; the tract on the right, descending,- banks of both Old and Cane rivers, consisting of 955.72 acres, was divided into lots similarly numbered, containing ea'ch 238.93 acres, and so with the Chevalier and cypress tracts, the lots in the one containing each 32.19 acres, and those in the other each 27.50 acres.
The lots, or portions, to be drawn by the heirs were then made up by assigning all of the lots 1 in the several tracts to the lot, or portion No. 1; all of the lots 2 in the several tracts to lot, or portion, No. 2, and so on; so that each heir would get one lot in each tract, identified by number with the lot, or portion, drawn by him.
One of the witnesses called in the case testified that he either lost the original plat, made by Deegan and attached to the act of partition, or that it was stolen from him, and neither the original nor any copy of it was offered in evidence. We find in the brief of the plaintiff’s counsel what purports to be a copy of the plat (less the cypress tract, which is not shown) and, while we cannot technically consider it as evidence, we find that as part of the argument it serves to aid in the elucidation of the act of partition, and for that purpose here attach it to, and make it part of, this opinion, marking it “Sketch.”

In the drawing by the heirs, lot, or portion, No. 1, consisting of the lots 1 in each of the tracts (including the cypress tract, not shown on the sketch) fell to A. H. Decorate; lot, or portion, No. 2, consisting of the lots 2 in each of the tracts, fell to Henry *407 Hertzog, Jr.; lot, or portion, No. 3 fell to Mrs. Marie Elcey Hertzog, wife of J. Ernest Breda; and lot, or portion, No. 4 fell to Miss Laura A. Hertzog (who became Mrs. Leon Greneaux). These lots, or portions, are described in the act of partition as follows:
“Lot No. 1, one consisting of 79.74 acres of the homestead tract, lying on the left bank of Cane .river, descending; and 238.93 acres, lying on the right bank of Old river, and being the upper portion of the plantation of Henry Hertzog, deceased, on both sides of said river, together with the buildings and improvements thereon. Also lot No. one of the tract known as the woods, or cypress, land containing 27.50 acres; and lot No. one of the tract known as the Chevalier tract, containing 32.19 acres, as set forth on said map and plan of survey aforesaid.
“Lot No. 2, consisting of the same quantity of land on the left bank of Cane river as lot No. one, above described; and 238.93 acres on the right bank of Cane river and Old river; and lots 2 of said cypress and Chevalier tracts, containing the same quantity of land as' in lot No. 1, as set forth on said map and plan of survey aforesaid, with all buildings and improvements thereon.
“Lot No. 3 of said plantation, containing the same quantity of land as the foregoing lots 1 and 2 on both banks of said Cane river, together with the buildings and improvements thereon, and lots No. 3 of each of said cypress and Chevalier tracts, as set forth on the map and plan of survey aforesaid.
“Lot 4 of said plantation, containing the same quantity of land as the above described lots 1, 2 and 3, on both banks of Cane river, with the buildings and improvements thereon, and also lots No. 4 of said Chevalier and cypress tracts, as set forth on the map and plan of survey aforesaid.’’
On November 13, 1875, A. H. Lecomte, by an act before A. E. Lemce, notary, sold to Henry Hertzog all the land that he had acquired in the partition, including, by description' the “two hundred and thirty-eight l>3/ioo acres, lying on the right bank, descending, of Old river.”
On December 21, 1885, Henry Hertzog exchanged the lot No. 2, containing 238.93 acres-- on the right bank of Cane and Old rivers “ * * * being the same property acquired by said Henry Hertzog by said act of partition,” with Mrs. Greneaux, receiving, instead, certain lands which she had so acquired, and giving her $150, boot.
On December 20, 1887, Henry Hertzog sold to J. Ernest Breda various tracts of land including the following described:
“1st. The lot drawn by A. H. Lecomte in the partition, made Nov. 9, 1875, by notarial act, * * * in the succession of Henry Hertzog, deceased, or between his heirs, and described as follows: Lot No. 1, consisting of the upper portion of the homestead or plantation tract, known as the Morgan place, containing 79.74 acres, on the left bank of Cane river, descending; and 238.93 acres lying on the right bank, descending, of Old river. Also 27.50 acres, and lot No. 1, of the tract known as the Chevalier tract, containing 32.19 acres, together with all the buildings and improvements thereon; said lot consisting of said tract and being particularly described and marked out on the plan of survey and field notes of John Deegan, U. S. Dy. Surveyor, filed with said act of partition, being the same property acquired by the present vendor from A. H. Lecomte, by act of date Nov. 13, 1875, passed before A. E. Lemce, notary public.”
On September 8, 18SS, Breda executed a notarial act, declaring that, with the intention of obtaining a loan thereon, he had executed his note for $1,000, payable in 12 months, with interest, etc., and to secure payment of the same mortgaged in favor of any future—
“holder or holders, a certain tract of land, situated in the city and parish of Natchitoches, on the right bank, descending, of Old river, together with all the improvements thereon, designated as lot 2, on a plat of survey made by John Deegan, civil engineer, * * * filed with an act of partition made between the heirs of Henry Hertzog * * * Nov. 9, 1875; said tract containing 238.93 acres, being a portion of the property acquired by vendor from Henry Hertzog by act passed before the undersigned Dy. Oik. Dec. 20, 1887.”
In December, 1888, suit was instituted-against Breda upon a claim which he con *409 sidered fraudulent, and defended on that ground, but judgment was rendered against him thereon for $250.18 upon April 3, 1889. In the meantime, on the preceding day, he had made a dation en paiement to his wife of quite a number of tracts of land, including several of those acquired from Henry Hertzog, but not including any lot described as situated on the right descending bank of Old, or Cane, river, and containing 238.93 acres. Whether Marco Giovanovich acquired the mortgage note, issued by Breda in September, 1888, at the time of its execution or afterwards, is not shown. He was a wealthy man, dealer in lands and lender of money, and may have made the original loan to Breda, or have bought the note from the lender. He caused executory process to issue on it in October, 1891, hut evidently with the approval of Breda, since, as alleged and proved, Breda wrote the petition and order of court and waived the formalities; and, we may add, it is fair to presume that it was he who gave the notary the description of the property for the drawing of the act of mortgage. The evidence fails to show that Marco Giovanovich ever took possession under the sheriff’s deed, or ever saw the land thereby conveyed, and it is shown that the plaintiff herein, who inherited from him, has never been in this country. On the other hand it appears that, on February 16, 1892, Mrs. Greneaux sold the lot 2, which she had acquired from Henry Hertzog, Jr., to W. W. Gurry, who in February, 1895, sold it to Williams, and that 'Williams, in November, 1909, sold it to Johnson, who was living on it when this suit was brought, and had been so living from the date of his purchase, the adjoining lot on the north side, containing 238.-93 acres, having been occupied by no one, save a part of it, which for a while, and until Johnson found his lines by a survey, was occupied by him.- - Neither Breda nor his heirs ever made any claim to lot 1, or exercised any right of ownership with respect to it after the sale by the_ sheriff in 1891, until shortly before the institution of this suit, when a surveyor whom Johnson employed to establish the lines of lot 2, which he had acquired, made the supposed discovery that lot 1 belonged to the Breda heirs, or was “lying loose,” and offered his information for sale, without finding a purchaser, and up to that time the land had escaped taxation for many years.
Opinion.
Summarizing the facts thus found, it appears that Henry Hertzog acquired lot No. 2, containing 238.93 acres, in the partition, and a few days later acquired from A. H. Lecomte the lot No. 1, containing 238.93, which Lecomte had acquired in the partition. On December 21, 1885, he (Hertzog) gave the lot No. 2 that he had acquired in the partition to Mrs. Greneaux, in exchange for land that she had thus acquired, so that the only lot left to him, containing 238.93 acres, the title of which traced back to the partition, and which lay on the right descending bank of Old river, was the lot No; 1, that he had acquired from Lecomte, which was the lot that he sold to Breda on December 20, 1887; and it is not pretended that Breda ever acquired or owned any other lot of that acreage and title similarly situated. When, therefore, on September S, 1888, he issued his note for $1,000, and secured .its payment upon a lot described as “a certain tract of land situated in the city and parish of Natchitoches, on the right bank, descending, of Old river, together with all the improvements. thereop, designated as lot'2 on a plot, of. survey made by John Deegan, civil engineer and surveyor, filed with an act of partition.made between the heirs of Henry Hertzog (Sr.) and passed before George F. Kearney, recorder, Nov, .9, 1875. Said tract containing 238.93 acres, being a. portion of the property acquired .by vendor [meaning mortgagor] from Henry *411 Hertzog, by act * * * Dec. 20, 1887,” be must have attributed, tbe number “2” to tbe lot mortgaged by him through error, or else the transaction would have been fraudulent; and, as it is conceded that Breda was a man ‘ of high character, incapable of dishonesty, the conclusion that he acted in error is inevitable. It is said that, to authorize the correction of such an error, it must be shown to have been mutual, and that it could not be .so shown, as to Giovanovich, who was not a party to the act of mortgage. The act, however, runs in favor of the holder of the note, and it is shown that Giovanovich was the holder when the mortgage was foreclosed, and it is not shown that the note was ever held by any one else. It is not unlikely, therefore, that he was present, loaned the money, and received the note as the mortgage was executed. But, whether he did or not, we must presume that he loaned the money upon the faith of the act of mortgage, which carried the assurance that the mortgaged lot belonged to the mortgagor. The defense rests upon the theory that the use of the term “No. 2” in the description of the lot, as contained in the act of mortgage, was necessarily fatal, since the mortgagor was not the owner of lot No. 2, and hence that the mortgagee can take nothing by that act. And that, no doubt, would be true, under some circumstances; as, for instance, if the mortgagor had not at that time owned a lot’ to which a description, interpreted in accordance with the intention of the parties, could be applied, and if that lot were not now owned by the mortgagor’s heirs (if it be hot' considered to have been sold as the mortgaged próperty in the foreclosure proceeding). It Will'be observed that in several par'ticularh the description in the act is equally applicable to'lot No. 1 and to lot No. 2, to wit, the tracing of the title to the partition, the acreage and the location of the lots, and that in one particular there is conflict, rendering the description ambiguous; that is to say, the act in one place reads, “designated as lot 2,” whereas the concluding clause reads, “being a portion of the property acquired by the vendor [meaning mortgagor] from Henry Hertzog, by act * * * Dec. 20, 1887”; and those descriptive statements are in irreconcilable conflict, since it was lot No. 1, and not lot No. 2, that was acquired from Henry Hertzog on December 20, 1887. Is it likely, then, that Breda intended to mortgage the lot that he had acquired from Hertzog, and of which he was the owner, or the lot he had not acquired from any one, and of which he was not the. owner ?
Marco Giovanovich died in 1896, Breda, in 1914, the sheriff, to whom the writ of seizure and sale was directed is also dead, as we infer', and the probability is that the seizure was made in his office, and that neither of the parties in interest visited the land in connection with the matter. In fact, as it is shown to have been uninhabited and subject to overflow, it is quite within the limits of probability that neither Giovanovich nor Breda would have been able to distinguish between the two lots, if either of them had gone there; and that the sheriff, making the sale, would have been unable to inform a bidder whether he was selling the lot that Breda had acquired from Hertzog or lot No. 2, of which he had never been the owner, and which then belonged to Mrs. Greneaux, and, so far as we are informed, was free of mortgage. All that we know of the circumstances of the sale is derived from the testimony of Chas. E. Trickel, brother of the then sheriff, and himself a deputy sheriff, which testimony reads, in part, as follows:
“Q. Do you know what was the custom of his office in the case of seizure of unoccupied lands;‘did he go on the land itself or make an olfice seizure? (Objection and ruling.) *413 A. Where it was what is called ‘wild land/ land in the possession of no one, we simply made out a notice of seizure, and served the notice on the party and advertised the property for sale. Q. I suppose you do not know what was actually done in the foreclosure of the mortgage in the suit of Giovanovieh v. Breda? A. No, sir. Q. In making seizures, would your brother, the sheriff, go and make them himself, or would he send a deputy? A. He usually sent a deputy,” etc.
Our conclusion, then, is that the description of the mortgaged property was conflicting, and, therefore, open to interpretation, and since the mortgagor and his heirs have allowed more than a quarter of a century to pass without asserting the contrary, during which time no third persons have acquired rights, and the property in question has remained unclaimed, unoccupied, and untaxed, and since the litigants now before the court stand in the shoes of the original parties thereto, it should be presumed that the mortgage and foreclosure out of which this suit has arisen was interpreted to apply to the property owned by the mortgagor, rather than to that in which he had no interest, and hence that the title thereto is now vested in the plaintiff, as the heir o£ the mortgagee and adjudicatee of that property. Penn v. Rodriquez, 115 La. 174, 38 South. 955, and cases there cited.
The difference between correcting acts of conveyance, in which there are equities, and these, in which there are none, is recognized in Ker v. Evershed et al., 41 La. Ann. 15, 6 South. 566, cited by defendants’ counsel; and it is well established that, if a portion of a description would mislead, it must be read with, and controlled by, other parts, which explain it. Bryan v. Wisner, 44 La. Ann. 832, 11 South. 290 (syllabus).
We find no error in the judgment appealed, and it is therefore affirmed.