OVERTON, J.
 

 This suit was instituted by the Louisiana Oil Refining Corporation, Henry C. Walker, Jr., Elias Goldstein, and others, to reform an act of sale from’George W. Shaw, Jr., to Charles J. Jackson, dated November 18, 1899.
 

 The position of plaintiffs is that Shaw intended to sell, and Jackson intended to purchase, the S. E. % of the S. W. % of section 13, and the N.
 
 y2 of the
 
 N. W. % of section 24, township 21 north, range 8 west, but that, instead of the deed so describing the property, it erroneously described it as being the S. E. % of the S. W. % of section 12, and the N.
 
 y2
 
 of the N. W. % of section 13, in the township and range named; the error being in the designation of the wrong sections. The deed, however, as to only the N.
 
 y2
 
 of the N. W.
 
 %
 
 of section 24, is involved in this litigation.
 

 It is also the position of plaintiffs that 3 years prior to the execution of this deed Jackson was permitted to take possession, under an agreement to purchase, of the land intended to be conveyed, which was known as the Flaherty or Harris place, while he was paying for the property, and that he remained in the actual possession of the same, undisturbed, until his death in September, 1922, or for a period of 27 years.
 

 The plaintiffs Walker and Goldstein assert title to the N.
 
 y2 of
 
 the N. W. % of section 24,
 
 which
 
 is the land involved in this controversy, by mesne conveyances from Jackson, and the remaining plaintiffs assert the
 
 *42
 
 ownership of mineral rights in the property, emanating from Jackson.
 

 The defendants are the surviving children of George W. Shaw, Jr., and Mary L. Shaw, both .deceased. They do not assert any right by inheritance from their father, nor does it appear that they have ever accepted his succession, but they urge that they are the owners of an undivided 43%go interest in the land in dispute by inheritance from their mother, and from a brother and sister, who inherited from her, but who have since died, without issue. The defense is a denial of every fact alleged by plaintiffs; necessary for the recovery of judgment by the latter, and a plea of prescription, liberandi causa, of 10 years, filed in this court. Defendants also filed a reeonventional demand, in which they assert ownership of a 437/aeo interest in the land, and allege that large quantities of oil and gas have been produced from the property, approximating $8,000,000 in value, in which they aver that they are entitled to a 43%go interest, and pray' for an accounting, and to be decreed the owners of the interest in the land, mentioned above.
 

 It appears from the evidence adduced on the trial that Jackson arranged with Shaw to purchase from him certain land, which, properly described, was the S. E.
 
 Vi
 
 of the S. W.
 
 Vi
 
 of section 13, and the N. % of the N. W.
 
 Vi
 
 of section 24, in the township and range, mentioned above. It also appears that this was approximately 3 years before the execution of a deed to Jackson. Shaw permitted Jackson to take possession of the property to be conveyed, prior
 
 to the
 
 execution of the deed, while the latter was paying the purchase price. .While Jackson was on the property, cultivating it, Shaw, who resided only about a mile and a half from it, visited the place at times, especially for the purpose of collecting the payments to be made, and never once suggested, so far as appears, that Jackson had located on the wrong property. On November 18,1899, Jackson had completed his payments for the property, and on that day, while Jackson was still on the place, Shaw executed a deed to him, describing the property as being in Sections 12 and 13, instead of sections 13 and 24. The land described in the deed was never owned or claimed by Shaw, is some distance from the property in question, and was known as the Deloach place.
 

 At the time that Shaw acquired the property, and at the time that he'executed the foregoing deed, the community of acquets and gains was in existence between him and his wife. After the execution of the deed, Jackson continued to live on the property and to cultivate it. In 1903 he purchased another tract from Shaw, adjacent to that already occupied by him, and in 1907 he purchased from Thomas L. Cook a contiguous 120-acre tract, thus giving him, approximately, 300 acres in one body.
 

 In 1906 the community existing between Shaw and his wife was dissolved by the death of Mrs. Shaw. Prior to the death of his wife, as appears from the evidence of some five or six witnesses, Shaw declared on various occasions that he had sold the property to Jackson, referring to that occupied by Jackson, and, as later appeared, misdescribed. It also appears that it was well known and recognized in the community in which Jackson and Shaw lived that the former had purchased the property from the latter, and was cultivating it.
 

 In 1907, soon after Jacks on had enlarged his place by the purchase of the 120-acre tract from Cook, he moved from that part of the place purchased by him from Shaw to the part conveyed to him by Cook, though he continued to cultivate the part from which he moved until his death in 1922, with the exception of that portion of it occupied by min
 
 *44
 
 eral lessees holding under him, which he cultivated up to the time of their occupancy. Since Jackson’s death, the land has been cultivated by his widow and heirs, with the exception of that part of it occupied by the mineral lessees.
 

 In 1918, at which time oil and gas leases were being taken in the vicinity of this land, it was discovered that the land was erroneously described in the deed executed by Shaw in favor of Jackson. On August the 24th of that year Shaw and Jackson went before the clerk of court for the purpose of correcting the erroi\ The clerk, as seems to have been his custom in such matters, wrote the correction on the margin of the page of the conveyance record on which the deed was recorded, calling attention to the misdescription, and correctly describing the property intended to be conveyed. This correction was signed by both Shaw and Jackson, and the clerk then certified under his signature, using initials to indicate his official capacity, that the correction was executed in his presence. The clerk testified on the trial that the correction was executed in 'his presence.
 

 On July 26, 1919, Shaw, by notarial act, executed a correction deed in favor of Jackson with respect to the property in question. Attention was called in this deed to the errors in description contained in the original deed, to the effort made to correct the description therein on the margin of the conveyance records, followed by a correct description of the property intended to be conveyed.
 

 We shall first consider the prescription of 10 years, liberandi causa, pleaded. This prescription is established by article 3544 of the Civil Code, which reads that “in general, all personal actions, except those before enumerated, 'are prescribed by ten years.” The first question that is presented under this plea is whether an action to reform a deed, by correcting an error in the description of the property intended to be conveyed, so as to make the deed conform to the true intent of the parties, is a personal action. Such an action — that is, an action to reform a deed— has not for its object the assertion of a claim on immovable property, or the assertion of an immovable right against it. The fact that the action to reform a contract may affect incidentally the title to real estate does not necessarily make it a real action. Thus it has been uniformly held that a suit to enforce the resolutory condition in a sale of real property, by dissolving the sale, is a personal action, and is barred by the prescription here pleaded, although the action will result, if successfully prosecuted, in the recovery of real property. Jones v. Crocker, 1 La. Ann. 440; George, Curator, v. Lewis, 11 La. Ann. 654; Hunter v. Williams, 16 La. Ann. 129. We think that the present action is not a real action. Code of Practice, arts. 4, 41.
 

 In our view an action to reform a deed is .a personal action. Article 3 of the Code of Practice defines a personal action as “that by whi'c'h a person proceeds against one who is personally bound towards him, either by a contract or by virtue of the law, in order to compel him to pay what he owes to him, or to perform what he has promised,” and article 29 of the Code provides that “personal actions arise from contracts, where one has bound himself for his own advantage, as by selling, purchasing, hiring or letting, or by any like contracts,” and other articles of the Code provide that they also arise from quasi contracts, offenses, and quasi offenses. As the present action is one looking to the complete performance of an obligation assumed by the head and master of the community, through which the defendants herein claim by inheritance from their mother, we regard the action as a personal one, and, since no other prescription is provided for
 
 *46
 
 such an action than that prescribed by article 3544 of the Civil Code, we consider the prescription there established as governing the case.
 

 Regarding the action as a personal one, governed by the foregoing article of the Code, the next question to be considered is the date from which the prescription runs. There is nothing in the article cited, or elsewhere in the Code or statutes, that fixes the date. Ordinarily, prescription runs against a cause of action from the date the cause of action accrues, and it might be said in such eases, as the present, that the cause of action accrues the moment the deed is delivered with the erroneous description in it. However, to apply that rule to its full extent in such a case as this might cause one’s action to prescribe before he ever suspected that he had occasion to sue.
 

 In 23 Ruling Case Law, p. 353, § 50, speaking of the statute of limitations as applied to actions for the reformation of instru'ments, it is said: “Just when the statute begins to run depends on the circumstances under which the proceeding for reformation is begun. It ■ will not begin to run until the facts which constitute the fraud or mistake which is the ground for the reformation are discovered or, at any rate, until the time when, by use of due diligence, they ought to have been discovered by the party applying for relief, or his privy.” In 34 Cyc. p. 965, it is said, with reference to the running of statutes of limitation, in such cases, that they “vary in their provisions according to ■jurisdiction; but in all cases the statute begins to run only from the discovery of the mistake, or of such facts as would put a person of ordinary intelligence and prudence -on inquiry and which, if pursued, would tend to such discovery.”
 

 Both Shaw and Jackson were dead When this suit was filed. We must depend, therefore, upon circumstantial evidence to show when Jackson discovered the error. In 1916, he leased the land for mineral purposes under the erroneous description contained in the deed to him. In May, 1918, he renewed the lease under the same description. In August, 1918, he and Shaw executed the correction of the deed, that the latter made to him, on the margin of the conveyance records. Thereafter, Jackson dealt, concerning the property, under the correct description. In our view the error was not discovered until between May and August, 1918, nor do we think that Jackson had 'reason to suspect its existence until then. Therefore the prescription of 10 years had not run when this suit was brought and put .at issue in the early part of 1927.
 

 Entertaining the foregoing view, it may be said that we find it unnecessary to consider the effect of the possession of the property, which it is alleged it was the intention of Jackson to buy and Shaw to sell, enjoyed by Jackson up to his death, upon the running of the prescription pleaded, though we are inclined to the view that the possession held operated as a bar to the running of the statute.
 

 It is now necessary to consider certain objections urged by defendants to the admissibility of evidence. Defendants for the first 'time urge in this court that the deed made by Shaw to Jackson, in 1899, which it, is the purpose of this suit to reform, should not have been received in evidence, because the original was not offered, but only a recorded copy of it, without (Sufficiently showing the loss of the original, and, secondly, because Shaw’s signature to the deed was not proven.
 

 If defendants had any objections to urge to the admission of the deed in evidence, the objections should have been urged when the offering was made. The admission of thfe deed not having been objected to when it
 
 *48
 
 ■was offered in evidence, the deed will be considered as being properly before the court.
 

 Moreover, we think that the record fully establishes the genuineness of the original. While the deed is written in such form as to convey the impression that it was written by the vendor, yet after the signatures of the parties thereto and of the two subscribing witnesses appears the certificate of the clerk of court that the deed “was executed, signed and, acknowledged” in his presence. As the deed was executed and signed in the presence of the clerk, it is fair to presume that it was executed and signed in the presence of the two attesting witnesses whose signatures form part of the instrument. Assuming that the deed is too informal to be considered a notarial act, yet we think it is valid and has full probative value as an act under private signature, duly acknowledged in the presence of the subscribing witnesses to it. Moreover, when Shaw signed the correction on the margin of the conveyance records, which was proved, he acknowledged ■that the deed corrected was executed by him, and he did likewise when he executed the notarial act of correction.
 

 Defendants also urge that the trial court erred in admitting against them the correction on the margin of the conveyance records of the deed made by Shaw to Jackson, and also in admitting, to affect their rights, the notarial act of correction executed •by Shaw. Defendants timely objected • to these offerings. Their chief ground of objection, which is applicable to both offerings, is that these corrections were made .by their father long after the dissolution of the community by the death of their mother. They urge that, while their father had the right to make the correction, so far as it affected his ■rights in the property, he had not the right ■to do so, so far as concerned their rights therein, for the reason that their mother’s interest in the community, of which this property formed part, had vested in them by her death and the death of their sister and brother. The answer to this objection is that the property belonged to the community at the time Shaw sold it to Jackson; that he then had the right, as head and master of the community, to sell the property; that, in selling it, it was his duty to the vendee to sell it under a correct description, and when it was discovered, after the dissolution of the community, that he had failed to discharge properly that duty, it was then his duty to correct, as far as possible, the error he had made. We think, therefore, that his acts in discharging the duty imposed were admissible, at least, as circumstances, against defendants, to show the error in the description, and what property it was his intention, as head and master of the community, to convey. Guidry v. Davis, 6 La. Ann. 90; Caldwell v. Hennen, 5 Rob. 20. Two other objections were made by defendants to these offerings, but they are not pressed in their briefs, and possess no merit.
 

 It is also urged that plaintiffs have failed to establish a right in themselves to prosecute this suit. They have established their claims as owners and lessees, respectively, of the property, but defendants contend that something more is required to establish their right to maintain this suit. Defendants’ position is that it should appear that Jackson, in parting with the property here involved, and in granting the mineral lease, transferred in connection with the property and the lease the right to sue for a correction of the description in the deed by which he held. This contention, in our view, is not well founded. The fact that plaintiffs are the owners and the lessees of the property in- dispute gives them the right to reform the deed by which their author held by having the description corrected.
 

 
 *50
 
 As relates to the sufficiency of the evidence to establish plaintiffs’ demand, we think that it is amply sufficient. As appears from the statement of facts made by us, Jackson moved on the property with Shaw’s consent and cultivated it under an arrangement to purchase the property. Shaw knew on what property Jackson had located under the arrangement to purchase. In making the deed to Jackson he erroneously described the property. It is obvious that it was his intention to sell Jackson the property upon which the latter had located; in fact, Shaw did not own the property described in the deed. While the community between Shaw and his wife was still in existence, Shaw, on various occasions; told others that he had sold the property to Jackson, and when the error was discovered Shaw did what he could to correct it. During all this period Jackson was in the actual possession of. the property. There is no' reason why plaintiffs should not be granted the relief for which they pray. The rights of third persons have not intervened to prevent it. The defendants in this case are not third parties to the community through which they claim by inheritance from their mother, nor were their deceased brother and sister, who also inherited from their mother, through whom defendants also claim. They all stand in the shoes of their mother, who was a member of the community. Giovanovich v. Breda’s Widow, 149 La. 402, 89 So. 251; Schultze v. Frost-Johnson Lumber Co., 132 La. 366, 61 So. 404.
 

 The trial court, in a well-considered written opinion, found for plaintiffs, and also against defendants on their reconventional demand. The judgment is correct.
 

 For these reasons, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., recused.