95 So.2d 644

George M. AGURS

v.

Aggie Rollins HOLT et al.

No. 43047.

May 6, 1957.

———◆———

Tucker, Bronson & Martin, H. M. Holder, Shreveport, for plaintiff-appellant.

Bullock & Bullock, by Otis W. Bullock, C. E. Hall, Shreveport, for defendants-appellees.

McCALEB, Justice.

Plaintiff, as successor in title to his grandmother, Mrs. Margaret D. Agurs, who owned all of Section 15 and most of Section 14 of Township 17 N., Range 16 E., in Caddo Parish instituted this suit on October 8, 1952 for the reformation of a deed executed by his grandmother on December 12, 1904 in favor of James Holt, father of the defendants, James S. Holt, Jr., Mary Lizzie Holt Williamson and Doris Holt Willis.[1]

Joined as defendants by reason of their ownership of mineral leases acquired from the Holt heirs, which affect portions of the disputed property, were Union Producing Company, Stanolind Oil & Gas Company and Hunt Oil Company, as well as various royalty claimants who acquired from plaintiff and who have aligned themselves with him. Plaintiff subsequently settled with Union Producing Company and therefore there is no dispute as to it. And Stanolind Oil & Gas Company, having acquired mineral leases from all main litigants, took no part in the proceedings.

Hunt Oil Company, which had acquired from defendants an oil and gas lease affecting a portion of the property involved in the litigation, admitted in its answer that the lease had expired by its own terms prior to the commencement of the suit. Nevertheless, it pleaded 10-year prescription acquirendi causa and, since the filing of a notice of lis pendens by plaintiff, it has acquired from defendant, Doris Holt Willis, a new lease which became subject to the outcome of the litigation.

Accordingly, the contest is essentially between George A. Agurs, as successor to his grandmother, and the above named children and heirs of James Holt, the vendee under the deed sought to be reformed.

1. Defendant, Aggie Rollins Holt, James Holt's widow in community, died subsequent to the institution of this suit and the above named defendants succeeded to her rights as her heirs at law.

The basis for the action is that the property as described in the deed does not accurately depict the property actually conveyed and that this resulted from mutual error of the parties, it being also contended that the description is ambiguous.

In their answer, defendants deny that there was mutual error or that the deed misdescribes the property or that the description is ambiguous. In the alternative, defendants pleaded the ten-year liberative prescription under Article 3544 of the Civil Code as a bar to plaintiff's action for reformation and, in this Court, they have asserted the ten-year acquisitive prescription which was pleaded in the answer of Hunt Oil Company.

Following a protracted hearing, the trial judge concluded that there existed no substantial ambiguity between the description stated in the deed and that shown on a plat of the tract attached to the deed and, further, that plaintiff had failed to establish mutual error. The demand was accordingly rejected. Plaintiff has appealed.

■ The law respecting reformation of instruments is well settled here and elsewhere. It is an equitable remedy and lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. See Ober v. Williams, 213 La. 568, 35 So.2d 219, citing 45 Am. Jur. Sec. 45 et seq. It is a personal action, even when applied to real estate (see Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183), in which the burden is on the one seeking reformation to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Waller v. Colvin, 151 La. 765, 92 So. 328; Smith v. Chappel, 177 La. 311, 148 So. 242; Fair v. Williams, 187 La. 953, 175 So. 631 and Southwest Gas Producing Co. v. Hattie Brothers, 230 La. 339, 88 So.2d 649. Hence, it follows that the instant case presents for determination mainly a question of fact, bearing in mind that plaintiff carries the burden of proof and that the evidence of mutual error must be strong and convincing.

■ The description contained in the deed to the 80-acre parcel sold by Mrs. Agurs to James Holt on December 12, 1904 reads:

"80 acres of land described as follows: Commencing 25.53 chains West on the Section from the NE corner of Section 14 T 17 R 16 run thence West along Section 45.00 chains to stake, thence South 17.77 chains to stake, thence East 45.00 chains to stake, thence North 17.77 chains to place of beginning in Section 14 T 17 R 16 in Caddo Parish, Louisiana, together with all buildings and improvements thereon. Plat of said land being hereto attached for greater certainty."

A plat drawn in pencil on a small piece of notebook paper, dated December 9, 1904 and signed by George Wilson, Engineer, was filed with and, as stated in the description, made part of the deed. The plat shows a square designated as (section) "14" in which quarter section lines are drawn. Inside the square, there appears a tract of land designated as 80 acres and bearing the notations on the north and south sides of "45 chs." and on the east and west sides of "17.77". The plat is not drawn to scale and it does not pictorially indicate how far distant the eastern boundary of the 80-acre tract is from the northeast corner of Section 14 which is stated in the description in the deed to be "25.53 chains". Nor does it show how far distant the western boundary is from the northwest corner of Section 14.[2] However, on the plat itself there is a description of the acreage conveyed practically identical with that contained in the deed.

Plaintiff's position that the deed and the plat (which he says is ambigous) misdescribes the property intended to be sold and acquired is founded on the premise that the description in the deed erroneously locates the starting point to be 25.53 chains west of the northeast corner of Section 14 and that the parties actually agreed to pass title to a piece of property of identical dimensions which was 20 chains further to the west of the description set forth in the deed, that is, that the description should have read "commencing 45.53 chains west of the Section from the NE corner of Section 14 * * *". And his counsel maintain that the evidence produced by plaintiff in connection with the circumstances surrounding the sale lead only to the conclusion that George Wilson, who surveyed the property on the ground and made the sketch, apparently mistook the northeast corner of the Agurs' property for the northeast corner of Section 14.

The fact is that the northeast corner of the Agurs' property, which is bounded in Section 14 on the east by the property belonging to the Dunn family, is exactly 20 chains (the width of a governmental 40-acre tract) west of the northeast corner of the section. Counsel say that an iron pipe at the northeast corner of the Agurs' property was evidently thought by the surveyor to mark the section corner of the governmental survey.

We think that the evidence clearly and convincingly sustains plaintiff's contention. The record discloses that, long prior to the execution of the deed, James Holt entered into an oral agreement with plaintiff's grandmother for the use of 80 acres of her land for a period of three years if he would

2. Actually, the evidence shows that the tract possessed by Holt under the deed extends over the western limits of Section 14 and into Section 15 for a distance of 666 feet.

clear the same. Holt took possession of the 80 acres by clearing the land, farming it and enclosing it with fences. After the lease term expired, Holt made an offer to purchase these 80 acres which was accepted.

Mrs. Agurs had entrusted the management of her property to her son, James M. Agurs, plaintiff's father. Mr. Agurs was 80 years old at the time of this suit and was the only living witness who had any direct knowledge of the sale. Because of his death during the trial, his pre-trial deposition was admitted into evidence, in which he testified that James Holt wanted to purchase the particular tract he had cleared and that, when it came time to execute the deed, he and Holt went with George Wilson, the engineer, and had the property surveyed on the ground. Mr. Agurs' description of the procedure used in making the survey is that he, Holt and Wilson began marking off the property at the northwest corner of the tract which Holt had inclosed; that they walked due south 17.77 chains to where a creek or bayou (called Cross Bayou) runs in an easterly direction and turned east just north of the bayou, walking eastward for a distance of 45 chains, then north for 17.77 chains and, finally, back west to the beginning point. He further asserted that, after marking off on the ground the number of chains which would encompass 80 acres, Wilson located the beginning distances from the section lines so as to describe the property to be sold; that, immediately after the survey, Wilson and Holt went to town, bringing the survey to his mother and that, shortly thereafter, the sale was consummated. Mr. Agurs stated that he was not present at the act of sale.

The deposition of Mr. Agurs clearly evidences that it was Holt's intention to purchase the land which he had cleared and placed under fence. This testimony is fully supported by the physical evidence that the tract today is cleared and still under fence except for a small portion at the northeast corner which adjoins other property owned by defendants;[3] that the east and west fences are of a distance so that they include within their boundaries approximately 80 acres and that the land immediately to the east of the east fence is not cleared but, rather, is low, marshy land. In other words, subsequent surveys and, in particular, an aerial photograph introduced by plaintiff depict an 80-acre tract of high land, which was cleared and possessed by Holt throughout the years, of identical dimensions as set forth in the act of sale, except that this land is situated 20 chains west of the tract described in the deed, being 45.53 chains from the northeast corner of Section 14 instead of 25.53 chains.

3. On February 26, 1909, Holt acquired a 50-acre tract in Section 11, T. 17, R. 16, situated due north of the 80-acre tract in controversy.

Mr. John E. Heard, a surveyor, was employed by plaintiff to make a survey and to determine if there was any existing evidence of prior surveys which would disclose whether the Wilson survey had been coincidental with the description in the deed and his legend notation on the plat. Mr. Heard testified he did find evidence of an old survey, which coincided with the property presently being occupied by defendants, but he failed to find any evidence of old fences, blazes, markings or stakes identifying the property as described in the deed. It was his opinion that the blazes and markings on "witness trees" clearly supported the testimony of James Agurs that the survey made by Wilson on the ground, just prior to the sale, was to mark off the 80 acres as presently occupied by defendants. He further expressed the view that, when Wilson described the property as stated on his plat, he undoubtedly mistook the NW corner of the NE¼ of the NE¼ of Section 14, for the section corner of the NE¼ of Section 14, and that this accounts for the described location of the property being 20 chains east of where the tract is situated and of the point where the parties intended as the beginning point in stating the description of the tract.

Plaintiff's witness, Fred Rogers, testified that, just before World War II, he purchased merchantable timber on the Agurs' property in the vicinity of Holt's property; that, at this time, James Holt pointed out to him the property he owned and that, while Holt did claim some land to the east of his east fence, he disclaimed any ownership to property over the bayou or creek. Yet, the deed description would make it appear that the southeast corner of the property extends over and across this body of water. Significantly, it is pointed out by plaintiff's counsel that Holt permitted Rogers to cut timber on at least a portion of the property, to which claim is now being made, under a belief that it did not belong to him but rather to Agurs.

The testimony of defendant, James S. Holt, Jr., taken in a pre-trial deposition, also tends to support plaintiff's contention that the deed as written did not reflect the intention of the parties and that Holt never did claim any portion of the land lying to the east of his east fence. Holt, Jr., stated that, as far back as he could remember, the fences were the same as they are today; that his father was a very particular man in his business dealings and that he would, hardly fence in property which did not belong to him.

On this aspect of the case, plaintiff's counsel correctly observes that the testimony of Holt, Jr. is contrary to defendants' denial of any mutual error because, if effect be given to the deed as it is presently written, the result would be that Holt had fenced in 36 acres on the west that did not belong to him and failed to fence 36 acres on the east that he did own.

The defense evidence does not rebut the strong case made by plaintiff. Various witnesses produced by defendants testified that the area to the east of Holt's east fence was known as Holt's property, being referred to locally as "Holt's Bottom"; that it was used by Holt as pasture for his animals and as a source of fire wood and that there was a gap in the east fence to allow passage through it but, when closed, it served to prevent animals from crossing over to the western portion which was under cultivation. And counsel for defendants also point to the fact that Holt and his heirs have paid the taxes on the property since its acquisition, whereas neither plaintiff nor his heirs ever paid taxes on this eastern 36 acres.

There is obviously no merit in defense counsel's argument respecting the payment of taxes by defendants. The assessment rolls merely reflect the ownership according to the recorded deed of an 80-acre tract. Nor do we find any substance in the conclusion that counsel draw from certain mineral leases and conveyances executed by plaintiff, wherein it was recited that he is the owner of all of the land located in Section 15, notwithstanding that part of the property enclosed by Holt is located in Section 15. Obviously, plaintiff had no actual knowledge of the fact of Holt's ownership until 1952 when this dispute arose.

In addition, while it may be true that defendants and their father did use certain portions of the land lying east of their fence, the evidence makes it abundantly clear that this use was only by sufferance of the Agurs and that Holt never possessed it as owner. Indeed, we think the evidence makes the conclusion inescapable that Holt actually intended to purchase and did purchase from Mrs. Agurs the exact 80-acre parcel he had fenced and occupied, the eastern boundary of which lies 20 chains further west than the eastern boundary of the land described in the deed and that the instrument should be accordingly reformed so as to reflect the true facts.

■■ Defendants' plea of the 10-year liberative prescription is not meritorious. While it is settled that an action for reformation of a deed is a personal action and, hence, is governed by the prescription provided by Article 3544 of the Civil Code, it is equally well established that this prescription does not begin to run against the party having the right to seek reformation until the error or mistake is discovered by him or should have been discovered by the use of due diligence. See Louisiana Oil Refining Corporation v. Gandy, supra; Haas v. Opelousas Mercantile Co., 197 La. 500, 2 So. 2d 3 and Antley v. Smith, 219 La. 525, 53 So.2d 401. The record indicates that plaintiff first obtained actual knowledge that the defendants were claiming ownership of land in the NW¼ of the NE¼ of Section 14, which he believed he owned, in 1952 when he visited the site of an oil well which was being drilled in that quarter quarter section

and this suit was filed within a few months after this discovery. Prior to that time there was no occurrence (and defendants have not referred us to any) which would or should have placed plaintiff or his ancestors on inquiry as to the correctness of the description contained in the deed to the property conveyed to Holt.

■ The principal defendants, the heirs of James Holt, alternatively seek to take advantage of the 10-year acquisitive prescription pleaded by defendant, Hunt Oil Company, and they claim that they have long ago perfected a valid prescriptive title to the acreage lying east of the fence erected by Holt and covered by the erroneous description contained in the deed. This contention is founded on the theory that, since they corporeally possessed the property west of the east fence, such possession was sufficient to sustain their claim to all of the property described in the deed. In support of this claim, they rely on Article 3498 of the Civil Code providing that "When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits."

■ The plea is without merit for the simple reason that neither did Holt nor the defendants ever possess or intend to possess as owner the land east of his east fence under the deed, which erroneously included that property as part of the tract conveyed. It is to be noted that Article 3498 of the Civil Code, relied on by defendants, merely establishes a presumption that the possessor intends to possess to the full extent of the limits set forth in the title. But, where it is shown, as here, that the purchaser did not intend to buy or possess the property, as described in the deed, there is no basis for a conclusion that he has possessed conformably to the title and, even if it is found that he possessed a part, the presumption that he possessed according to the title is rebutted by the fact that no such possession was intended.

■ Where there is a sale under an erroneous description, the title passes to that property which the parties actually intended to buy and sell notwithstanding the error in the description of the property conveyed. Fair v. Williams, 187 La. 953, 175 So. 631. For this reason alone it would seem that, as between the parties, no just title to the erroneously described property is translated and the vendee cannot use such title as a basis for prescription. Kittridge v. Landry, 6 Rob. 477.

The judgment appealed from is reversed and it is ordered that there be judgment herein in favor of plaintiff and against James S. Holt, Mary Lizzie Holt Williamson and Doris Holt Willis, decreeing that the deed, dated December 12, 1904, by Mrs. Margaret D. Agurs in favor of James Holt, conveyed only the following described property and that said deed be and it is now corrected so that the description of the property conveyed therein reads:

"Commencing 45.53 chains West on the Section from the NE corner of Section Fourteen (14), Township 17, Range 16, run thence W along the North Section line of Sections Fourteen (14) and Fifteen (15), same Township and Range, 45 chains to stake, thence South 17.77 chains to stake, thence East 45 chains to stake, thence North 17.77 chains to place of beginning, being in Sections Fourteen (14) and Fifteen (15), Township 17, Range Sixteen (16) West, Caddo Parish, Louisiana."

Defendants are to pay all costs.