162 So.2d 135 (1964)
Mrs. Ruby WALKER, Plaintiff-Appellant,
v.
JIM AUSTIN MOTOR COMPANY, Inc. and Connecticut General Life Ins. Co. of Hartford, Connecticut, and Universal C. I. T. Corporation, Defendants-Appellees.
No. 6089.
Court of Appeal of Louisiana, First Circuit.
March 2, 1964.
Rehearing Denied April 6, 1964.
Writ Refused May 27, 1964.
*136 Ponder & Ponder, by L. B. Ponder, Jr., Amite, for appellant.
Kantrow, Spaht & Kleinpeter, by John Schwab, George S. Womack, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
Plaintiff, as the widow and duly qualified administratrix of the succession of her late husband, Melvin Walker, and as natural tutrix of their two minor children, has filed this suit in which she prayed for judgment "* * * reforming the bill of sale to show that Melvin Walker was the purchaser of the Cadillac in question and as such the insured in question and mortgagor to Universal C.I.T. Credit Corporation and that there be judgment in favor of petitioner and against the Connecticut General Life Insurance Company in the full sum of $3415.00 payable to petitioner and Universal C.I.T. Credit Corporation as their interests appear and that petitioner do have the further judgment against Universal C.I.T. Credit Corporation requiring it to return to her for cancellation the mortgage note and that the bill of sale be reformed to show that Melvin Walker was the purchaser, the mortgagor and the insured under the aforesaid described group insurance policy."
The case was duly tried and judgment rendered denying the demands of the plaintiff and dismissing her suit at her cost, and she has accordingly appealed to this court.
*137 There is no conflict as to the facts in this case which are relatively simple. On May 23, 1961 Melvin Walker, husband of plaintiff herein, went to the Jim Austin Motor Company, Inc., an automobile dealer in the City of Baton Rouge, Louisiana, for the purpose of purchasing a used Cadillac automobile. He was accompanied by an employee, Nelson White. When they arrived at the motor company Walker selected a 1959 Cadillac which was priced to him at $3400.00, with a down payment to be made of $500.00, leaving an unpaid balance of $2900.00, and which was to be covered by insurance with a premium of $277.80, finance charges of $717.70, and $15.00 for official fees, which totalled a time balance of $3910.50. Included in the insurance coverage was the policy issued by Connecticut General Life Insurance Company in its group life insurance policy No. CM1811, which by its terms, in the event of the death of the purchaser of the mortgaged car, would pay the balance of any indebtedness on the automobile at that time.
After the terms had been agreed upon, the representative of the motor company apparently called the finance company, for in a short time he informed Walker in the presence of White that the company could not get insurance in Walker's name which, as shown was due to some difficulty with regard to the destruction of four trucks by fire which had belonged to Walker and for which he had a law suit pending. The motor company told Walker they could not finance the sale, and either asked him whether he could put it in anybody else's name or he asked them, and he told them he had a sister working in Baton Rouge named Miss Ann M. Walker. The motor company got in touch with Universal C.I.T. Credit Corporation who in turn made a credit check on Ann M. Walker of Baton Rouge, as per "Customer Statement and Investigation Sheet", which was offered in evidence, and agreed to accept a chattel mortgage given by her on the purchase of the automobile. Ann M. Walker then purchased the automobile, gave a chattel mortgage, signed the note and also left a check for $100.00 to complete the cash payment demanded by the motor company as her brother was short in that amount. The motor company held this check, which was later replaced by Melvin Walker, and the check returned to his sister. In connection with the sale of the automobile as per chattel mortgage to Ann M. Walker, the Connecticut General Life Insurance Company issued its group life insurance policy "insuring persons indebted to UNIVERSAL C. I. T. CREDIT CORPORATION OR ITS AFFILIATED CORPORATION" covering the life of Ann Walker.
Immediately after the transaction regarding the purchase of the car by Ann M. Walker was completed, her brother, Melvin Walker, took possession of the Cadillac automobile and brought it back to his home in Tangipahoa, Louisiana, where he retained full possession until the date of his death, June 20, 1961. Ann M. Walker paid on installment of $130.35 after the death of her brother. Subsequent installments became delinquent and suit was filed by the Universal C.I.T. Credit Corporation against Ann M. Walker, being No. 84,332 of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, Louisiana.
The present suit was filed on August 25, 1961, which in the main requests a reformation of the sale to Ann Walker and, finally, if successful, payment of the balance due on the note given in connection with the chattel mortgage on the car by Ann Walker under the terms of the group life insurance policy issued by the Connecticut General Life Insurance Company of Hartford, Connecticut.
There is no doubt from the testimony that Melvin Walker intended to buy this Cadillac, nor that, when he was informed by the motor company that financing and insurance could not be secured by him, he suggested and asked if his sister, Ann M. *138 Walker, could not be the purchaser in his place and stead. Her credit rating and character were investigated by the finance company who no doubt notified the Jim Austin Motor Co. Inc., that she would be acceptable, and, naturally, the latter was glad to sell the car to her. There was no misunderstanding or error with regard to this transaction insofar as the motor company, Melvin Walker, or his sister were concerned. There is no doubt in the court's mind that she was doing this as a favor to her brother. We find nothing in the record showing any previous knowledge on the part of the finance company nor the insurance company which would justify a reformation of their contract.
The law with regard to reformation of contracts is concise and well-settled. In Agurs v. Holt, 232 La. 1026, 95 So.2d 644, the Court stated:
"The law respecting reformation of instruments is well settled here and elsewhere. It is an equitable remedy and lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. See Ober v. Williams, 213 La. 568, 35 So.2d 219, citing 45 Am.Jur. Sec. 45 et seq. It is a personal action, even when applied to real estate (see Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183), in which the burden is on the one seeking reformation to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Waller v. Colvin, 151 La. 765, 92 So. 328; Smith v. Chappel [Chappell], 177 La. 311, 148 So. 242; Fair v. Williams, 187 La. 953, 175 So. 631 and Southwest Gas Producing Co. v. Hattie Brothers, 230 La. 339, 88 So.2d 649. Hence, it follows that the instant case presents for determination mainly a question of fact, bearing in mind that plaintiff carries the burden of proof and that the evidence of mutual error must be strong and convincing."
Also in Reynaud v. Bullock, 195 La. 86, 196 So. 29, the court held:
"In a suit between parties to a contract, either party may correct any error in instrument purporting to evidence the contract so as to make it express correctly the intention of the parties, provided that rights of third parties have not intervened, but the error or mistake must be mutual, and burden is on the one seeking the reformation to prove the error, and he must carry such burden by clear, and the strongest possible, proof. Civ. Code, art. 1826."
In Cockerham v. Aime, 110 So.2d 238, this Court considered the reformation of an instrument and therein stated:
"Considering this controversy is between the parties to a contract and there is an absence of intervening rights of third parties, either party may obtain reformation in order that the act will correctly and accurately reflect and express the true intention of the parties thereto. In this connection, we quote the following language appearing in State v. Standard Oil Co. of La., 164 La. 334, 113 So. 867, 873:

"`Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties.' Levy v. Ward, 33 La.Ann. 1033; Vignie v. Brady & Charpaux, 35 La. Ann. 560; Armstrong v. Armstrong, 36 La.Ann. 549, 551; Dickson v. Dickson, 36 La.Ann. 870, 872; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Gladdish v. Godchaux, 46 La.Ann. 1571, 16 So. 451; Robinson v. Atkins, 105 La. 790, 793, 30 So. 251; Gray v. Coco, 113 La. 33, 36 So. 878; Penn v. Rodriguez, 115 La. 174, 38 So. 955; *139 Chaffe v. Minden Lumber Co., 118 La. 753, 43 So. 397; Coleman v. Thibodaux, 119 La. 474, 44 So. 269; Sims v. Jeter, 129 La. 262, 55 So. 877, Garrett v. Spratt, 131 La. 707, 60 So. 199; Frantom v. Nelson, 142 La. 850, 77 So. 767; Giovanovich v. Breda's Widow and Heirs, 149 La. 402, 89 So. 251; Waller v. Colvin, 151 La. 765, 92 So. 328.
"The following excerpt from Rodgers v. S. H. Bolinger Co., Ltd., 149 La. 545, 89 So. 688, 690, appears pertinent:
"`Equity may reform * * * even contracts unambiguous on their face on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to support relief there must be clear proof of the antecedent contract and of the error in committing it to writing.' Ker v. Evershed et al., 41 La.Ann. 15, 6 So. 566 cited in Succession of Bellande, 42 La.Ann. 241, 245, 7 So. 535."
While we believe the above citations are sufficient to outline the settled jurisprudence of this State we also wish to quote from Price v. Taylor, 139 So.2d 230, decided by this court as follows:
"Conceding that ordinarily parol evidence cannot be received to alter, vary or contradict the terms of a written instrument free from ambiguity, such rule, however, has no application where fraud or error is alleged. In these latter instances the rule is well established that where fraud or error is properly pleaded and it is made clearly to appear that through fraud or mistake the written instrument expresses a purpose different from that mutually agreed and intended by the parties, such mistake may be corrected and the writing reformed to express the true intention of the parties.
The rule further requires that before such relief may be afforded there must be adduced clear proof of the different antecedent agreement as well as the error in committing it to writing. Ker, et al. v. Evershed et al., 41 La.Ann. 15, 6 So. 566. See also Carter Oil Company v. King, La.App., 134 So.2d 89, and cases therein cited.
"It is equally well established that the burden is on the one seeking reformation to prove the error alleged and that said onus must be discharged by clear proof of the strongest possible type. Reynaud v. Bullock, 195 La. 86, 196 So. 29; Carter Oil Company v. King, supra; Agurs v. Holt, 232 La. 1026, 95 So.2d 644; Cockerham v. Aime, La. App., 110 So.2d 238. See also Rodgers v. S. H. Bolinger Co., 149 La. 545, 89 So. 688; and Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65."
It is also well-settled that equity will reform a contract but will not make a new one. See 2 Cooley's Briefs on Law of Insurance, Pages 14, 15; Thalsheimer v. Pacific Fire Ins. Co., et al., La.App., 176 So. 326.
In the case now under consideration there is no allegation or proof of fraud so the sole question is whether there has been a mutual mistake or error. Additionally, the proof is totally void of any antecedent agreement that Melvin Walker was to be the purchaser of this automobile and should have been named as such in the chattel mortgage, or in the insurance policy. On the contrary, Melvin Walker was informed he could not purchase this automobile because Austin Motor Company would not sell it to him as he could not obtain financing or insurance. He then had his sister come and purchase this automobile, sign the chattel mortgage and the note, which he did not sign in any capacity, and the finance company, relying upon the purchase by Ann M. Walker, bought the note and had the policy of insurance issued on the life of *140 Ann M. Walker. All of this was with Melvin Walker's express consent and knowledge. There was no mutual mistake or error made and the contract was exactly in accordance with the antecedent understanding between Melvin Walker, Ann M. Walker and the Austin Motor Company. The agreement to purchase the note and chattel mortgage by the finance company and the issuance of the group life insurance policy to secure the indebtedness in the event of death was based upon the standing and credit rating of Ann M. Walker, and upon the understanding that she was the purchaser of the automobile. To reform any one of the instruments would be to make a new contract which is expressly forbidden, and rightfully so, in reformation suits.
Counsel for plaintiff in brief states: "* * *, if an insurance policy within the actual intention of the parties is issued for the protection of another than the named insured, the insurer may be held to have afforded such protection by the policy, or to be estopped to deny it; also, the policy may be equitably reformed to show the true intention of the parties in this regard." Among other cases cited to support this statement are Christo v. Eagle Star Ins. Co., 232 La. 28, 93 So.2d 682; Randazzo v. Insurance Co., etc., 196 La. 822, 200 So. 267; Churchman v. Ingram, La.App. 2 Cir., 56 So.2d 297. Factually the cases cited are not applicable. There was never any actual intention of any of the parties to issue an insurance policy for Melvin Walker rather than the named insured, Ann M. Walker. There is nothing to reform for the policy when issued in the name of Ann M. Walker was completely in accord with the true intention of the parties.
Counsel for plaintiff further contends "the only party with an insurable interest was the true owner who was the correct insured under the credit insurance policy. * * *". In this connection he cites Maggio v. State Farm Mutual Auto. Ins. Co., La.App., 102 So.2d 505, and Rube v. Pacific Ins. Co. of N. Y., La.App., 131 So.2d 240. There can be no doubt but that Ann M. Walker had a very definite insurable interest by reason of the fact that in the event of injury or damage to third persons she and not Melvin Walker would be liable. Also, in Rube v. Pacific Ins. Co. of N. Y., supra, this court had occasion to review the jurisprudence on the question of an insurable interest and on pages 244 and 245 we find the following:
"The general rule obtaining in other jurisdictions, however, is stated as follows in Volume 29 Am.Jur. Verbo, Insurance, Section 322, Page 294:
"`What is more, an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest; it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. For instance, although a person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable.' 29 Am.Jur. 294, verbo Insurance, § 322.
"The rationale of the foregoing rule is that although a party be neither an owner nor part owner of property he nevertheless has an insurable interest therein if the property is burdened with a debt or charge for which he is secondarily liable and the loss of or damage thereto, occasioned by the hazard against which it is insured, subjects or exposes him to financial, pecuniary or economic loss, hazard, risk or liability.
* * * * * *

*141 "In conformity with the foregoing codal authority, the courts of this state have repeatedly held parol evidence inadmissible to prove a promise to pay an obligation of a third party. Hartmann v. Ebeyer, 18 La.App. 467, 138 So. 915; Schneider v. Ruf, La.App., 176 So. 402; B. & B. System v. Everett, La.App., 34 So.2d 521; Litton v. Parker, La.App., 106 So.2d 776; Magee v. Crowe, La.App., 111 So.2d 552. The only exception to the foregoing rule are those instances wherein the oral promise to pay is prompted by pecuniary or business motivation on the part of the promisor. B. & B. System v. Everett, supra, Fuselier v. Hudson, La. App., 93 So.2d 266.
"The reason for the rule and the exception thereto are set forth in Hornsby v. Rives, La.App., 2 So.2d 532, 534, as follows:
"`In this case as well as in all others of like or similar facts, the primary question to determine is whether the obligation of the defendant is a collateral one, that is, one of suretyship. If so, parol testimony is incompetent to prove the agreement out of which such a relation arose. On the other hand, if the promissor has bound himself as principal with the person to whom credit is extended, the rule is different. The obligation then is independent and primary. The fact that both parties are responsible for the debt does not alter the situation so far as primary responsibility to the creditor is concerned. The leading case on this subject is Watson Brothers v. Jones, 125 La. 249, 51 So. 187, wherein the court said:
"`"There can be no objection to one's contracting to pay for goods to be delivered, whether to the obligor, or to a third person, and the obligation resulting from such a contract may be none the less a debt of the obligor because the third person, to whom the goods are delivered, also becomes bound for the price. If the condition of the contract is that the obligor is to pay for the goods only in the event that the person to whom they are to be delivered does not, then the latter is to be regarded as the principal debtor, and the contract is a collateral one, of suretyship, in which the obligor would be regarded as binding himself for the debt of another, and which could not be proved by parol evidence. Graves v. Scott & Baer, 23 La.Ann. (690), 692; Levy & Dieter v. Dubois, Lowe & Foley, 24 La.Ann. 398."
"`In National Materials Company v. Guest, La.App., 147 So. 771, the court, as reflected from the syllabus, held:
"`"Though parol evidence is inadmissible to establish promise to pay debt of third person, it is admissible to establish absolute primary obligation to pay for goods delivered to third person (Civ.Code, art. 2278, par. 3)."'"
Ann M. Walker was primarily liable for the debt and was most assuredly exposed "to financial, pecuniary or economic loss, hazard, risk or liability." Factually, the Rube case is distinguishable from the case at bar in that plaintiff, Lillian A. Rube, signed no note, was not primarily or secondarily responsible for the debt, but in an attempt to enforce an insurance policy which had been issued to her, contended that as she had promised to take care of the debt if her brother did not and she therefore had an insurable interest. This theory was denied by this Court under Article 2278 of LSA-C.C. which provides:
"Parol evidence shall not be received:
* * * * * *
"(3) To prove any promise to pay the debt of a third person."
In the present case, of course, Ann M. Walker was primarily liable.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.
*142 PER CURIAM.
In application for rehearing counsel correctly points out an error in the statement of this Court that: "There can be no doubt but that Ann M. Walker had a very definite insurable interest by reason of the fact that in the event of injury or damage to third persons she and not Melvin Walker would be liable." This statement is immaterial and not necessary to a decision of this case and is to be considered as if not written herein. However, there can be no doubt but that Ann M. Walker had a very definite insurable interest because by reason of her having purchased the automobile and having executed a note and chattel mortgage for the unpaid purchase price thereof she became liable for the balance due thereon, which is more fully discussed subsequently in this opinion.
Rehearing denied.