OVERTON, J.
 

 This is a suit for the specific performance of an alleged contract to sell certain real estate in the city of New Orleans, described as grove 18, in section 11, and grove 54, in section 10, in the Lake Shore Land Company’s tract. The contract is dated October 27,1925. The purchase price is fixed at $4,500 cash. The time stated for the execution of the deed is on or before December 27, 1925. The provision concerning the payment of taxes is that the taxes for 1925 shall be prorated, and it is also provided that all necessary certificates, in the conveying of the property, shall be paid by the vendor. The alleged contract also provides, which is important, that the parties to it waive the benefits conferred by article 2463 of the Revised Civil Code, and agree that neither shall have the right to recede from it by the forfeiture of the deposit by the one, or the return of the double by the other. It is also provided that the brokerage of 5 per cent, shall be paid by the vendor, Mrs. Carrie V. Hall, the defendant, named in the title of this suit.
 

 This alleged contract, which it is the purpose of this suit .to enforce, is signed only by Joseph A. Blythe, the plaintiff herein, who is the intended purchaser. The contract is not signed by Mrs. Hall, who at the time was the owner of the property, but who has since sold it to her codefendant, S. G. Ereefield, though after the recordation of the contract and the evidence relied upon to show her acceptance of the contract.
 

 Some three months prior to the signing of the foregoing instrument by plaintiff, the defendant, Mrs. Hall, listed the property, described therein, with J. L. Onorato, a real estate agent, for sale. Onorato obtained from plaintiff the offer, contained in that instrument, to purchase the property, had plaintiff .sign the instrument, and immediately notified Mrs. Hall by telegram that he had received an. offer of $4,500 cash for the two groves, subject to a commission of 5 per
 
 *1123
 
 cent, accompanying the notification with a request that she telegraph instructions. On the same day, Onorato received a telegram from Mrs. Hall, reading as follows: “Will accept forty-five hundred dollars cash offer, subject to your 5 per cent, commission. Handle the transaction through the First State Bank at Decatur, Michigan.”
 

 Documents, called for by Onorato, to be used in the examination of the title were forwarded to him, through the bank at Decatur, Mich., and through Monroe & Lernami, of counsel for Mrs. Hall, and a power of attorney was sent to Nicholas Callan, of Monroe & Lemann’s office, authorizing him to sell the property.
 

 The instrument, signed by plaintiff, was not sent to Mrs. Hall, nor does it appear that the contents of it were communicated to her, though a copy of the instrument was sent by Onorato to Monroe & Lemann on November 9, 1925, who, as stated, were acting as counsel for Mrs. Hall.
 

 On January S, 1926, Mrs. Hall, through her counsel, first evinced her intention not to convey title to the property. Shortly thereafter this suit followed to force her to convey title, upon the theory that the instrument, signed by plaintiff, was, in fact, accepted by Mrs. Hall, and that Onorato’s acceptance of the offer, contained in it, was ratified and confirmed by Mrs. Hall, by her action and conduct.
 

 The defenses urged are that the purported agreement of sale was not. signed by Mrs. Hall or by any one authorized by her to sign or execute it, and therefore is not binding ; that the time fixed for the execution of ■the sale in this “purported agreement” elapsed without any offer on the part of defendant to carry out “the terms of the purported agreement,” until several days after the expiration of the time fixed, and therefore that “said agreement” expired by its own limitation, and that the said “purported agreement” is voidable for lesion beyond moiety; the property being worth more than twice the amount offered for it
 

 At the commencement of the trial, plaintiff moved that the defendants elect upon which one of these defenses they would rely. This motion was made upon the ground that the defenses are inconsistent. The motion was overruled. In this court the plaintiff urges that the defenses, relative to the expiration of the purported agreement, and relative to lesion beyond moiety, are inconsistent with the defense that there was no agreement to sell, and necessarily admit that there was such án agreement. .
 

 While defendants have not, in so many words, pleaded these defenses in the alternative, yet, in' effect, they have done so. They have, in effect, made these defenses alternative pleas by characterizing the agreement throughout as a “purported agreement.” In other words, their .position is that there was no agreement to sell; that, if the court should hold that the purported agreement was, in fact, an agreement, then it expired by its own limitation, without plaintiff’s offering to carry it out, and that, if the court does not find this defense- valid, then that the agreement is voidable for lesion beyond moiety. It is permissible to plead defenses in the alternative, growing out of the same state of facts or out of facts not inconsistent with them. We fail to find that defendants’ defenses are so pleaded as to make them inconsistent, or that they destroy the defense that there was no agreement to sell.
 

 The conclusion we have reached makes it unnecessary for us to consider any other defense than the one that there was, in fact, no agreement to sell, and hence, that there
 
 *1125
 
 is no contract to be specifically enforced. It is beyond dispute that no one signed the so-called agreement to sell, except plaintiff. After he signed it, standing alone, it was merely a written offer to purchase. It was necessary, to bind Mrs. Hall to sell, that she sign the alleged agreement, either herself, or through some one authorized in writing by her to do so. It was necessary that she accept the offer, as made, in writing, or through some one authorized by her in writing, because the offer was to purchase real estate, and called upon her, if accepted, to convey the property, within a prescribed time, upon certain terms and conditions.
 

 Plaintiff points to the telegram, dated the same day that he signed the offer, sent by Mrs. Hall to Onorato, advising him that she will accept $4,500 cash offered, subject to his commission of 5 per cent., as showing Mrs. Hall’s acceptance of the offer. This telegram, it will be recalled, was in response to one from Onorato, advising Mrs. Hall that he was offered $4,500 cash for the two groves, subject to his commission of 5 per cent None offer, signed by plaintiff, was mentioned in of the other terms and conditions of the this telegram, nor does it appear that Mrs. Hall had knowledge of them. As we have seen, the remaining terms and conditions were that the property was to be conveyed within a prescribed time; a provision relative to the prorating of taxes; a provision relative to the payment by Mrs. Hall for certain certificates; the waiver of the benefits conferred by article 2463 of the Revised Civil Code, relative to the right of the one who has given earnest money to recede from the promise, by forfeiting the money, and to the right of the one who has received it, also, to recede, on paying the double.
 

 The offer to purchase, in this instance, contains a provision to the effect that the purchaser will immediately deposit $450 with Onorato on account of the purchase price. This deposit might have been deemed earnest money, entitling either party to recede from the promise, under the provisions of article 2463 of the Code, had it not been for the waiver of the provisions of that article. The purpose of the waiver was therefore to shape the offer so as to make it possible to defeat any attempt to withdraw from it, if accepted, or, in other words, to make it possible to enforce specific performance.
 

 Mrs. Hall’s telegram was not the acceptance of an offer with these remaining terms and conditions attached to it, for she knew nothing of them. It is elementary that an offer must be accepted as made to constitute a contract. The telegram, sent by her, was merely an expression ■ of her willingness to accept the $4,500 offered, burdened with the payment to her broker of the 5 per cent, commission. It was presupposed that she' would be fully informed of the terms of the proposed contract, and that the instrument would be submitted to her for her acceptance or rejection.
 

 Mrs. Hall, therefore in person, did not accept the offer, declared upon as a contract. We think it clear that neither Onorato nor Monroe & Lemann had authority to execute such a contract for her, and that they did not assume to do so. If it be said, however, that Onorato accepted plaintiff’s offer to purchase in behalf of Mrs. Hall, or that Monroe & Lemann did so in their letters to Onorato, it is clear that neither had such authority. The former was merely Mrs. Hall’s real estate broker, whose duty it was to find a purchaser for her property, and not, in her behalf, to enter into a contract of the nature here declared upon, and Monroe & Lemann were merely the legal advisers of Mrs. Hall. There is not the slightest suggestion that
 
 *1127
 
 Callan, wlio' was the attorney in fact for •Mrs. Hall, with, authority to sell the properly, ever accepted the offer.
 

 But the plaintiff argues that Mrs. Hall tacitly accepted the terms of the contract, sued upon. This position, however, is not well taken, for it does not appear that she had actual knowledge, which is necessary, of all the terms of the proposed contract. It is also urged that she, by her conduct and actions, ratified the contract. This naturally presupposes that some one, without authority, accepted the contract for her. Granting, which we think the record does not disclose, that some one accepted the contract for her, nevertheless this position is not well taken, for, in order to constitute a valid • ratification of a contract, the person ratifying it must have had, at the time, actual knowledge of the terms of the contract, which, as stated, is not the case here. In such cases, constructive or imputed knowledge is not sufficient. 2 C. J. p. 480, § 97.
 

 Our conclusion is that the demand for specific performance was properly rejected.
 

 The judgment, appealed from, is therefore affirmed.