This is a suit by a real estate agent, Philip C. Treadaway, against Paul Giangrosso, for a commission of $225 and attorneys' fees of $75, a total of $300. It is based upon an alleged agreement between Giangrosso and Mrs. R. Borgstede for the purchase of certain property belonging to Mrs. Borgstede and known as No. 4409-11 Annunication Street, for a consideration of $4,500 cash.
The defendant, Paul Giangrosso, admits that he signed an offer to purchase the property, but avers that the offer was a tentative one based upon his daughter's approval of the property and an understanding was had with defendant's agent that the offer would be destroyed in the event of her disapproval. The defendant also admits that he did not purchase the property and did not make the deposit of ten per cent. as called for in the offer to purchase, taking the position that his offer was not accepted.
There was judgment below in favor of the plaintiff in the sum of $225, and defendant has appealed.
The alleged agreement to buy and sell the property of Mrs. Borgstede is based upon two documents, both of which are addressed to Philip C. Treadaway, Agent, on a printed form and both are dated May 20th, 1943. In one document Giangrosso offered to purchase the property and if his offer is accepted to deposit with the vendor's agent immediately $450 in cash. In the other Mrs. Borgstede agrees to sell the property for the sum of $4,500. Both forms, so far as the printed matter is concerned, are identical and contain the following clause: "Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay the Agents Commission and all fees and costs incurred in enforcing collection and damages."
It is upon this clause that the present suit is based because of Giangrosso's failure to purchase the property.
Among other defenses it is contended that there was no contract since Giangrosso failed to make the required deposit. State ex rel. Bond v. Register of Conveyances et al.,162 La. 362, 110 So. 559; In re Industrial *Page 678 
Homestead Ass'n, La.App., 198 So. 528. Defendant also contends that under Articles 1800 and 1801 of the Revised Civil Code, he was at liberty to withdraw his offer at any time prior to its acceptance and the offer in this case had never been accepted.
The first point to be considered is whether there was an acceptance of defendant's offer to purchase the property and, therefore, a contract between the parties.
It is argued that the acceptance of Giangrosso's offer is manifested by the separate offer of Mrs. Borgstede to sell the same property upon the same terms as Giangrosso agreed to purchase. However, as we have pointed out, Mrs. Borgstede addressed her offer to Mr. Treadaway, as did Giangrosso, and there seems to be no connection between the two. Both are offers, one to buy and the other to sell the property, but neither exhibits any acceptance, or any connection with the other offer. The fact that Treadaway was a real estate agent and, therefore, in a sense, represented both parties, does not alter the situation. Article 1812 of the Revised Civil Code reads: "Express consent must be given in a language understood by the party who accepts, and the words by which it is conveyed must be in themselves unequivocal; if they may mean different things, they give rise to error, which, as is hereinafter provided, destroys the effect of a contract."
It is significant that on the bottom of each offer there is printed the following: "I/we accept the above offer in all its terms and conditions" with the space allotted to the acceptor blank.
It is not necessary that the acceptance of the offer be made in the same act or at the same time and it will be sufficient if it be made before the withdrawal of the offer, Civil Code 1804, but there must be an acceptance. In the case before us Mrs. Borgstede informed Treadaway that she would sell her property, but it does not appear that Mrs. Borgstede ever heard of Giangrosso or was ever aware that he had made an offer to purchase the property and Treadaway had no authority to accept Giangrosso's offer.
The case of Blythe v. Hall, 169 La. 1120, 126 So. 679, 680, is in point. There the facts were practically the same. Mrs. Hall, the defendant in that case, listed her property with a real estate agent by the name of Onorato. Onorato obtained an offer from Blythe to purchase the property for $4,500 cash and immediately telegraphed Mrs. Hall, who resided in Michigan, that he had received an offer for her property and she replied by telegram "will accept forty-five hundred dollars cash offer, subject to your 5 per cent. commission. Handle the transaction through the First State Bank at Decatur, Michigan." The court held that there was no contract. Referring to the offer by Blythe it said:
"It is beyond dispute that no one signed the so-called agreement to sell, except plaintiff. After he signed it, standing alone, it was merely a written offer to purchase. It was necessary, to bind Mrs. Hall to sell, that she sign the alleged agreement, either herself, or through some one authorized in writing by her to do so. It was necessary that she accept the offer, as made, in writing, or through some one authorized by her in writing, because the offer was to purchase real estate, and called upon her, if accepted, to convey the property, within a prescribed time, upon certain terms and conditions.
"Plaintiff points to the telegram, dated the same day that he signed the offer, sent by Mrs. Hall to Onorato, advising him that she will accept $4,500 cash offered, subject to his commission of 5 per cent., as showing Mrs. Hall's acceptance of the offer. This telegram, it will be recalled, was in response to one from Onorato, advising Mrs. Hall that he was offered $4,500 cash for the two groves, subject to his commission of 5 per cent. * * *.
* * * * *
"Mrs. Hall, therefore in person, did not accept the offer, declared upon as a contract. We think it clear that neither Onorato nor Monroe Lemann (her attorneys) had authority to execute such a contract for her, and that they did not assume to do so. If it be said, however, that Onorato accepted plaintiff's offer to purchase in behalf of Mrs. Hall, or that Monroe Lemann did so in their letters to Onorato, it is clear that neither had such authority. The former was merely Mrs. Hall's real estate broker, whose duty it was to find a purchaser for her property, and not, in her behalf, to enter into a contract of the nature here declared upon, and Monroe Lemann were merely the legal advisors of Mrs. Hall."
There being no contract the defendant cannot be considered as being in default of its terms and, therefore, is not liable for the payment of commission to the real *Page 679 
estate broker, which was made contingent upon his default.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein dismissing plaintiff's suit at his cost.
Reversed.
JANVIER, J., absent, takes no part.