LANDRY, Judge ad hoc.
Appellant, George Aime perfected .this appeal from an adverse judgment of the Twenty-first Judicial District Court, Livingston Parish, Louisiana, decreeing reformation of an act of exchange of real property entered into between appellant and appellee Cockerham, wherein Cockerham transferred to Aime 'a residential site in “Cockerham Acres”, Livingston Parish, Louisiana,, in exchange for a 6.60 acre tract of rural property owned by Aime and also situated in Livingston Parish.
By notarial act of exchange dated January 12, 1956, plaintiff Cockerham (whose business is admittedly that of buying and selling real estate) owner of a subdivision known as Cockerham Acres, conveyed to defendant Aime the following described property:
“A certain plot or parcel of land situated in Section 30 Township 6 South Range 3 East, in the Parish of Livingston, State of Lortisiana, more fully described as follows:
“Begin at the northeast corner of the intersection of Magnolia Drive and Maple Drive in Cockerham Acres Subdivision, and measure in an Easterly direction along Maple Drive, a distance of Three Hundred (300) feet; thence measure in a Northerly direction a distance of One Hundred Fifty (150) feet; thence measure in a Westerly direction, a distance of Three Hundred (300) feet; thence measure in a Southerly direction along Magnolia Drive, a distance of One Hundred Fifty (150) feet to point of beginning.'
“Said property to be identified as the ‘George Aime Property’ on a plat to be made at a later date.
“Above property being subject to the restrictions in deed recorded in COB 78 page 216.”
In consideration of the transfer from Cockerham to him of the above described property, Aime (in the same act), conveyed to Cockerham a tract of land containing 6.60 acres, a description of which is not *240 material to the issues herein involved. The act of exchange declares the properties traded to be of equal value and recites the value of each to be the sum of $3,750.
On June 11, 1956, at the request of Aime, the exchange agreement of January 12, 1956, was, by notarial act, corrected pursuant to a map of survey made by John I. McCain, Civil Engineer and Surveyor, dated January 23, 1956, so that the description of the property previously conveyed to Aime was amended and revised to read as follows:
“A certain plot or parcel of ground, together with all the buildings and improvements thereon, situated in the Parish of Livingston, State of Louisiana, in Section Thirty (30) Township Six South (T-6-S Range Three East R-3-E), in that subdivision known as Cockerham Acres Subdivision at the northeast corner of the intersection of Magnolia Drive and Maple Drive, and being more particularly described according to a map made by John I. McCain, C. E. and Surveyor dated January 23, 1956, which is annexed hereto and made a part hereof as follows:
“Begin at the northeast corner of the intersection of Magnolia Drive and Maple Drive and run in an easterly direction along the north side of Maple Drive a distance of three hundred (300') feet and corner; thence run North 17 deg. 31' East a distance of ninety-eight (98') feet and corner; thence run North 6 deg. 2' East a distance of fifty-two (52') feet and corner ; thence run in a westerly direction parallel to the north line of Maple Drive a distance of three hundred (3000 feet to the east line of Magnolia Drive and Corner; thence run South 6 deg. 2' West a distance of fifty-two (52') feet and corner thence run S. 17 deg. 31' west a distance of ninety-eight (98') feet to the point of beginning.
“Appearers further declared that they do fully ratify and confirm said Act of Exchange in all other respects.”
The basis of Cockerham’s plea for reformation is that he intended to exchange two lots each measuring 75 feet front on the north side of a street known as Maple Drive by a depth of 150 feet parallel to the line of Magnolia Drive (said property being situated at the northeast corner of the intersection of Maple Drive and Magnolia Drive). Cockerham maintains that through mutual inadvertent error the property conveyed to Aime was incorrectly described as having a front of three hundred feet on the north side of Maple Drive. Plaintiff contends the act of correction dated June 11, 1956, was executed at Aime’s request solely for the purpose of revising the bearings of the east and west side lines of the property when a survey conducted in connection with Aime’s application for a loan on the property disclosed the eastern boundary of Magnolia Drive (which formed the western boundary of the property) did not run on a tangent and, therefore, it was necessary to correct the original act of exchange as the parties intended the eastern and western lines of the property to run parallel to the western boundary of Magnolia Drive.
In support of his plea for reformation, plaintiff relies upon the premise that where clear and convincing proof of an antecedent agreement and mutual error in reducing an agreement to writing is shown, reformation will be decreed on equitable principles even though the error is not apparent on the face of the document.
Defendant’s answer admits execution of the original act of exchange and the act of correction but otherwise denies the allegations of plaintiff’s petition.
In his brief, defendant Aime’s contentions are set forth as follows:
1.
In the sale of real property, a strong presumption obtains that the deed, as ex *241 ecuted, properly describes and conveys the land intended to be conveyed and evidence of error must be clear and convincing.
2.
An instrument executed according to the intention and understanding of the parties with full knowledge of the facts will not be reformed.
3.
Courts refuse to reform instruments when the alleged error is due to the negligence of the complaining party, particularly in the absence of a showing that complainant was misled by the actions of the other party.
4.
When mistake alone is relied upon as ground for reformation of an instrument, the mistake must be a mutual mistake.
5.
Reformation of a contract for mutual error will not be decreed in the absence of clear and convincing proof of an antecedent agreement with respect to which error is shown.
6.
Plaintiff’s right to reformation is barred by ratification in the form of the corrective act executed June 11, 1956.
More specifically, Aime contends that since plaintiff himself admittedly prepared the original act of exchange and voluntarily signed the act of correction some five months thereafter, plaintiff may not now complain of any inaccuracy in the documents. Defendant also contends there is no clear proof of error and in the absence of such proof, an act of exchange of real property is presumed to set forth the intention of the parties regarding the description contained therein and may not be reformed. It is likewise the position of defendant that there was no antecedent agreement and that preparation of the act of exchange by Cockerham constituted an offer which was accepted by Aime and, therefore, became a binding contract.
The trial judge did not favor us with written reasons for his judgment. However, for oral reasons assigned and dictated into the record, our brother below concluded plaintiff Cockerham proved mutual error relative to an antecedent contract and rendered judgment as prayed for by plaintiff. We believe this finding of fact is supported by the evidence.
Plaintiff Waldo S. Cockerham testified in substance that his business is developing real estate and prior to the date of the act of exchange involved herein, Mr. and Mrs. Aime contacted him relative to the purchase of a site in Cockerham Acres for the declared purpose of constructing a home thereon. Mr. and Mrs. Aime accompanied plaintiff to the subdivision where they were shown available sites; defendant and his wife ultimately expressed their preference for the property at the corner of Maple and Magnolia Drives. Cockerham informed Mr. and Mrs. Aime the price of lots in his subdivision was $2,000 for a 75 x 150 foot lot and that lots in Cockerham Acres were not surveyed (plaintiff testifying he obtained certain tax advantages by not having the lots surveyed until each sale was consummated). Plaintiff paced off a distance of 75 feet in order that the Aimes might see how large a 75 foot lot would appear. The Aimes then informed plaintiff they would need at least two lots whereupon plaintiff stepped off an additional 75 feet to give them an impression of the size of two lots. Mr. and Mrs. Aimes then stated they might possibly buy four lots at which point plaintiff paced an additional 150 feet so that defendant and his wife might obtain the effect of a lot having 300 feet front. A discussion ensued in which it was ultimately concluded the Aimes would purchase two lots of 75 feet front each commencing at the corner and running easterly along the northern 'line of Maple Drive and, in addition, Cockerham agreed to *242 reserve two adjoining lots or an additional 150 feet for purchase by the Aimes at a future date. In the course of the conversation which followed, Cockerham informed the Aimes that if they purchased two lots, he would reduce the total price the sum of $250 and sell two 75 foot lots as a unit for the price of $3,750. Aimes informed Cockerham that he owned a 6.60 acre tract of land which he would have to sell in order to finance the purchase of the lots in Cockerham Acres. During the negotiations between the parties, the possibility of an exchange of Cockerham’s lots for Aime’s rural acreage was considered and Aime informed Cockerham he had recently purchased the 6 acre tract for the sum of $3,000 and had spent approximately $700 to $800 in improving same. Cocker-ham was not certain who first suggested an exchange in preference to a sale but he was certain that he finally offered Aime two lots measuring 75 x 150 feet each commencing at the corner of Maple and Magnolia Drives in exchange for Aime’s acreage with the understanding the properties were of equal value of $3,750 each and, in addition, plaintiff undertook to reserve two adjoining lots of 75 x 150 feet each for Aime’s refusal. Cockerham assumed the obligation of preparing the act of exchange and did so by dictating same to Nerlie Wild, the Notary Public before whom the exchange was eventually executed. Aime commenced laying out his home prior to signing the act of exchange and completed construction of the concrete slab foundation for same on the two lots nearest Magnolia Drive before the exchange was executed. Aime later applied for a loan to finance construction of his home and when a survey required by the prospective lender disclosed the western side line of the property did not run on a tangent, the attorneys for the lender proposed the original act of exchange be corrected, whereupon the corrective act of June 11, 1956, was passed solely to correct the directional bearings of the east and west side lines. Subsequently plaintiff called upon Aime to discuss purchase of the additional 150 feet plaintiff had agreed to reserve and was informed by Aime that both the original and corrective acts included the additional lots. Cocker-ham told Aime that if the description in the act of exchange called for 300 feet, an error existed as plaintiff intended to convey 2 lots of 75 feet front each on Maple Drive. According to plaintiff, Aime then stated he knew a mistake had been made and he would deed the extra 150 feet back to plaintiff for the sum of $1. Plaintiff then informed defendant he would convey the additional two lots to defendant for the price of $3,000 to be represented by an unsecured interest free note for said amount which note plaintiff agreed to hold until such time as defendant was able to pay it. Cocker-ham, thereupon, prepared a note for $3,000 which Miss Wild presented to defendant who declined to sign it. Upon learning that Aime refused to sign the note, Cockerham contacted Aime who told him that he, Aime, had contacted some “old folks” about the matter and had been advised by these “old folks” that the trade was a fair one. On two occasions, once in the presence of Mr. Rudolph Easterly, and again in the presence of Miss Wild (both of whom testified on the trial of this case and corroborated plaintiff’s testimony in this regard) defendant admitted to plaintiff he had agreed to retransfer the excess property to plaintiff for the sum of $1 but that after discussing the matter with the “old folks” he concluded there was no error and would not sign anything.
Defendant Aime testified that when the lots were shown him and Mrs. Aime nothing whatsoever was said concerning either price or size of the lots to be sold. He stated he merely told Cockerham he wanted a lot and had no idea of the size of the lot he was to receive in exchange for his property until the act of exchange was presented to him for his signature. Upon reading the act, he was satisfied with the 300 feet recited therein and signed the document. He readily conceded he commenced construction of his home prior to seeing the *243 act of exchange and that his home was erected on the western 150 feet of the property or, as he expressed it, on the corner lot. Aime denied telling plaintiff he would reconvey the surplus property for the sum of $1 and explained that he told plaintiff he would return the extra 150 feet if a mistake had been made. After consulting with some “old folks”, one of whom he stated was his “daddy”, he concluded there was no error and refused to sign the note proposed by plaintiff. Aime denies having admitted to plaintiff in the presence of either Easterly or Miss Wild that he agreed to sell the disputed property to plaintiff for $1. He concedes the act of correction was executed solely for his accommodation and for the restricted purpose of correcting the directional bearings of the side lines of the lots he received from plaintiff.
Mrs. George Aime, wife of defendant, testified regarding the discussion which occurred on the property at the time Cocker-ham showed Mr. and Mrs. Aime the lots. Her testimony is substantially to the same effect as that of her husband inasmuch as she stated absolutely no mention was made of either the size or price of the lot or lots they intended to buy and she had no idea of the amount of property they would receive in exchange for their land.
Considering this controversy is between the parties to a contract and there is an absence of intervening rights of third parties, either party may obtain reformation in order that the act will correctly and accurately reflect and express the true intention of the parties thereto. In this connection, we quote the following language appearing in State v. Standard Oil Co. of La., 164 La. 334, 113 So. 867, 873:
“Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties.” Levy v. Ward, 33 La.Ann. 1033; Vignie v. Brady & Charpaux, 35 La.Ann. 560; Armstrong v. Armstrong, 36 La.Ann. 549, 551; Dickson v. Dickson, 36 La.Ann. 870, 872; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Gladdish v. Godchaux, 46 La.Ann. 1571, 16 So. 451; Robinson v. Atkins, 105 La. 790, 793, 30 So. 231; Gray v. Coco, 113 La. 33, 36 So. 878; Penn v. Rodriguez, 115 La. 174, 38 So. 955; Chaffe v. Minden Lumber Co., 118 La. 753, 43 So. 397; Coleman v. Thibodeaux, 119 La. 474, 44 So. 269; Sims v. Jeter, 129 La. 262, 55 So. 877, Garrett v. Spratt, 131 La. 707, 60 So. 199; Frantom v. Nelson, 142 La. 850, 77 So. 767; Giovanovich v. Breda, 149 La. 402, 89 So. 251; Waller v. Colvin, 151 La. 765, 92 So. 328.
The following excerpt from Rodgers v. S. H. Bolinger Co., Ltd., 149 La. 545, 89 So. 688, 690, appears pertinent:
“Equity may reform * * * even contracts unambiguous on their face on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to support relief there must be clear proof of the antecedent contract and of the error in committing it to writing.” Ker v. Evershed et al., 41 La.Ann. 15, 6 So. 566 cited in Succession of Bellande, 42 La.Ann. 241, 245, 7 So. 535.
Defendant’s first contention is that in a sale of real property there is a strong presumption that the deed as executed properly describes the property conveyed and he who alleges error in this regard must offer clear and convincing proof of such error. With this principle, we are in complete accord as we are, likewise, in agreement with the jurisprudence cited by defendant to the effect that equitable power of reformation is so extraordinary its exercise must be performed with great caution and only when clear and convincing *244 proof of error is adduced. These same authorities unmistakably hold that when clear and unmistakable proof of error is shown, equitable considerations will prompt reformation in order that the true intention of the contracting- parties may be made to prevail.
Numerous authorities are cited by defendant in support of his contention that an instrument executed in accord with the intention of the parties who had full knowledge of the facts at the time of execution will not be reformed. In this connection, defendant particularly relies upon the case of Bennett V. Robinson, La.App., 25 So.2d 641, but a careful reading of the Bennett case discloses that in said matter, plaintiff’s suit for reformation was dismissed because of plaintiff’s failure to present clear proof of the fraud alleged. Moreover, the principle enunciated in the Bennett case, supra, and the other cases cited by defendant, is inapplicable to the matter presently under consideration for the reason that the court finds the contract in question was not executed in accordance with the intention of the parties thereto.
Counsel for appellant points out that the evidence shows Cockerham himself prepared the contract in question and, therefore, reformation may not be decreed herein because the complaining party was responsible for the error and has failed to show he was misled by the other party to the agreement. In this connection, counsel for defendant cites several cases chiefly among which is Fontenot v. Coreil, La.App., 2 So.2d 97. The Fontenot case, as well as the other authorities cited by defendant, hold that failure to read a contract before signing constitutes negligence which precludes reformation for alleged fraud contained therein. In the instant case, there is no contention that Cockerham did not read the document. On the contrary, the evidence shows Cockerham prepared the document, but in doing so, incorrectly described the property he intended to convey. The Bennett Case is clearly distinguishable from that presently under consideration and the ruling announced therein is inapplicable to the facts of this particular case.
Defendant next contends that when mistake or error is relied upon as the basis for reformation of a document, the mistake or error must be mutual to all parties and there must have been an antecedent agreement between the parties concerning which mistake or error is alleged. It is conceded in defendant’s brief that mutuality of mistake or error is purely a question of fact to be determined by the circumstances in each particular case. It is defendant’s position there can be no mutuality of error inasmuch as there was no antecedent contract. Defendant maintains nothing was previously agreed upon between the parties and that preparation of the act of exchange by Cockerham was merely an offer accepted by Aime.
In discussing the question of the existence of an antecedent contract between Cockerham and Aime, we point out that Cockerham’s testimony clearly indicates he intended to convey two lots of 75 by 150 feet each or 150 feet front along Maple Drive and to reserve the adjoining 150 feet in the event Aime desired to purchase additional land at a future date. Although Aime denies this was the true intention of the parties, his conduct and actions, prior and subsequent to execution of the act of exchange, fail to support his position. It is an undisputed fact that Aime actually located his home on the 150 feet nearest the corner of Magnolia Drive, staked out the house and poured the concrete slab foundation therefor prior to his ever seeing the act of exchange. Certainly neither Aime nor any other reasonable individual would undertake such an operation without knowing exactly what property he was to receive. Furthermore, Aime’s testimony indicates he wanted at least two lots on which to build his home, therefore, if he understood he was to immediately obtain 2 lots of 150 feet each, it is strange he did not situate *245 his residence thereon in such manner as to indicate his intention to utilize the entire 300 feet as a residential site. Instead, he located his home on only one-half the property he now states he was to receive. We believe his action in this regard indicates Aime knew he was to receive in 'the exchange only 2 lots of 75 feet each. It i§ inconceivable that Aime or any one else would exchange real property of known dimensions and value for land of unknown proportions and worth. Furthermore, the evidence shows that when Aime arranged a loan to finance construction of his home, he mortgaged only the corner 150 feet, which fact is additional indication he understood he did not rightfully own 300 feet. The facts and circumstances above mentioned clearly show an antecedent agreement between plaintiff and defendant to the effect that defendant was to receive' a lot of ground measuring 150 feet front on Maple Drive and insertion of the words “300 feet” in the act of exchange instead of 150 feet, was error mutual to plaintiff and defendant. The error in question either escaped defendant’s notice or, if detected by him, he failed to direct plaintiff’s attention thereto.
We believe the following testimony of Aime appearing on page 59 of the transcript shows he considered the possibility of mistake:
“Q. You were going to ask the old folks what? A. What they thought about it — could it have been a mistake.
“Q. Well, now, at that time had you already signed the act of exchange between you and Mr. Cockerham? A. Sure.
“Q. Then are you saying that the description in there could have been wrong? A. Well, it could have been. I didn’t know. That’s what I thought right then, yes. It could have been, but I wanted to check on it.”
That there was an antecedent agreement between the parties and mutual error in regard thereto is further established by the testimony of plaintiff to the effect defendant agreed to reconvey half of the property to plaintiff for $1. We believe a fair evaluation of the evidence shows defendant told plaintiff in the presence of both Easterly and Miss Wild that he had agreed to resell the eastern 150 feet of the property to plaintiff but changed his mind.
Texas Co., et al. v. Rosenthal-Brown Fur Co., Inc., et al., 5 Cir., 12 F.2d 297, 16 F.2d 1022, certiorari denied 274 U.S. 746, 47 S.Ct. 658, 71 L.Ed. 1327, and Standard Oil Company of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, relied upon by defendant as being decisive of the issue of antecedent agreement, are clearly and easily distinguishable from the case at bar. These cases were decided upon questions of fact inasmuch as in each said case the court concluded the evidence failed to establish the existence of an antecedent agreement. Both cases recognize the antecedent agreement doctrine and were decided against the party alleging fraud or error because of an absence of clear proof of the fraud or error alleged.
Finally, defendant contends plaintiff’s right to reformation is barred because of plaintiff’s ratification of the act sought to be reformed. In this connection, defendant argues that execution of the act of correction by plaintiff subsequent to the date of the original contract constitutes ratification of the former agreement and indicates intention on the part of plaintiff to be bound thereby.
The defense of ratification raised by Aime is also coupled with a plea of estoppel. Defendant maintains that when plaintiff executed the act of correction in June, 1956, plaintiff ratified the former agreement and is now barred from seeking reformation of the original contract. In this same connection, defendant argues that execution of the act of correction estops plaintiff from claiming relief because of alleged error. Plaintiff contends defendant’s pleas of ratification and estoppel may not *246 be considered by the court for the reason that defendant failed to specially plead such issues.
A decision on the questions presented in this litigation does not require determination of the issue of whether defendant’s pleas of ratification and estoppel were timely filed. Conceding, arguendo, said pleas were timely filed, the circumstances of this case do not admit of their application herein.
It is elementary that estoppel is not favored in our courts. Young v. New Orleans Public Service, La.App., 35 So.2d 881. It is also the well settled jurisprudence of this state that the party who pleads estop-pel must affirmatively show he was misled by the other to his prejudice. Hebert v. Champagne, 144 La. 659, 81 So. 217, and cases cited therein. The record in this case is devoid of evidence showing that defendant Aime was misled in any way, therefore, his plea of estoppel could not be maintained under any circumstances.
To ratify an act or action one must have full knowledge of all the facts and act thereon with awareness thereof. Blythe v. Hall, 169 La. 1120, 126 So. 679. Ratification requires not only knowledge of the terms of the act involved, but also an express intention to be bound thereby with full knowledge of the facts and recitations contained therein.
In the instant case, it is abundantly clear that Cockerham executed the act of correction solely for the accommodation of defendant Aime and for the limited purpose of correcting the bearings of the eastern and western lines of the property in auestion. There is not one scintilla of evidence which even remotely suggests Cockerham intended to ratify the conveyance to Aime of property having a front of 300 feet on Maple Drive. The indispensable element of intent being absent, defendant’s plea of ratification must fall.
For the reasons assigned, the judgment of the lower court decreeing reformation of the Act of Exchange entered into by and between plaintiff Waldo S. Cockerham and defendant George Aime dated January 12, 1956, and the Act of Correction executed by said parties June 11, 1956, is affirmed.
Judgment affirmed.