## BUCKLEY v. THIBODEAUX et al.
### No. 1487.

Court of Appeal of Louisiana. First Circuit. Oct. 3, 1935.

See, also, 156 So. 79; 181 La. 416, 159 So. 603.

C. A. Blanchard, of Morgan City, for appellants.

Ellender & Ellender, of Houma, for appellee.

ELLIOTT, Judge.

Charles W. Buckley, owner of lands described in his petition contiguous to lands described as belonging to Emile Thibodeaux, Essie Blanchard, Mrs. Evelia Naquin, wife of Adam Naquin, and Aurelia Verrett, situated in the parish of Terrebonne, alleges that the boundary line originally established between his land and the lands belonging to the said defendants is no longer to be seen, and that its physical location is a matter of dispute and uncertainty. He brought an action of boundary against them, the purpose and object of which was to have the line re-marked.

He further alleges that his land lies east of Bayou DuLarge, not fronting thereon, but separated from the bayou by lots 1, 4, 5, and 7 of section 3, and 1, 4, 5, and 8 of section 9, all in township 20 south, range 16 east, belonging to the defendants. That said lands belonging to defendants were purchased from the United States Government by Newton Boley and purchased from the succession of Boley by Francois Viguerie, the defendants deraigning ownership to the land they possess from Viguerie and through Viguerie, from Newton Boley. That Viguerie, after becoming owner, caused the land to be subdivided by V. Sulakowski, surveyor, and sold it out to different purchasers according to the plan and survey made by Sulakowski.

The plaintiff prays that the limits separating his land from those of the defendants be re-marked, and that a surveyor be appointed by the court to do the work.

Defendants for answer deny plaintiff's alleged ownership and location.

They allege that they are each the owners by title of a small tract of land on Bayou DuLarge; that their title calls for "by depth of survey," which they and their authors always understood to mean a depth of 40 arpents from the east bank of Bayou DuLarge. They allege actual possession as owner for 30 years to the depth mentioned. They each plead the prescription of 30 years in aid of their alleged ownership, and that plaintiff is not entitled to an action of boundary until the dispute as to the depth of the land to which they are entitled is settled. They pray that plaintiff's suit be dismissed, but in the alternative, and in the event the court should order a fixation of the boundary line, they then in that event pray that it be fixed so as to give them a depth of 40 arpents from the east bank of the bayou.

The court appointed J. A. Lovell, surveyor, to re-mark the boundary as prayed for by the plaintiff. A survey was made and returned into court, and was opposed by the defendants. The court rendered judgment overruling defendants' claim to ownership by possession and prescription to the depth of 40 arpents from the east bank of Bayou DuLarge and homologated the survey. In so doing the court limited defendants' possession to the rear limits of the lots as created, formed, and located by the government, as existed when purchased by Newton Boley, said lots together making up the land owned by defendants.

Defendants have appealed. Motions and exceptions of misjoinder filed by defendants in the lower court and overruled are not discussed in their brief; we therefore understand that there is no further controversy concerning the matters mentioned.

▮ The evidence shows that plaintiff's land adjoins that of the defendants. Defendants claim ownership and possession as a result of the descriptive phrase, "by depth of survey or confirmation," alleged in their answer, and under which claim a depth of 40 arpents from the east bank of the bayou, carries their claim far beyond the rear limits of the lots which make up their lands, as formed and located by the government survey. This makes it necessary to decide what has been the result and effect of said phrase, the use of which commenced with the titles from Francois Viguerie in selling out the land which he had purchased as lots from the succession of Newton Boley. The Civil Code, art. 852, so far as pertinent, reads as follows: "if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bath faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession." And article 3515, "but one may prescribe beyond his title." The burden of showing possession as owner for 30 years, by some physical act of taking possession beyond that

called for by their respective titles, is on the party claiming it.

According to Lovell's return to the court Bayou DuLarge traverses a ridge from 6 to 10 arpents wide, but just how far back from the east bank the highland part of the lots formed by the government and sold to Boley extends the record does not inform us, but there commences where the high land terminates a low wet prairie marsh covered with grass of such character that it is not susceptible of cultivation nor permanent habitation. The prairie land claimed by defendants in this case is the same character of land the possession of which was in dispute in the case of Buckley v. Dumond, and Buckley v. Theriot (La. App.) 156 So. 784, 789. In the case mentioned, the title of Theriot contained the phrase, "by depth of survey," found in the titles advanced in the present case, by Emile Thibodeaux et al. In acting on the claim of Theriot, we said: "The lower court in a carefully prepared opinion considered this term, 'by depth of survey,' and gives it as his conclusion that Theriot's land is likely situated in a French or Spanish grant, and that such a vague and indefinite expanse must be limited and confined to the grant in which the land is located and cannot without proof be considered as calling for an extent of land, which would conflict with the limits of adjoining lands, acquired from the United States and located and surveyed by surveyors, acting under the authority of the national government, as is the case with the limits called for by the title of the plaintiff. We agree with this conclusion and hold, as did the lower court, that under the evidence there is no conflict between plaintiff's limits and those of Theriot under the title which he adduced."

In this case the defendants show no sufficient physical act of taking possession on their part, beyond the limits called for by their respective titles, and their titles call for nothing beyond the government limits of the lots which go to make up the land that they each and respectively own.

Plaintiff's land is the S. E. ¼ of the N. E. ¼; the S. E. ¼ of the S. W. ¼ and S. E. ¼ of section 3 and the E. ½ of the S. E. ¼ of section 9; all of sections 2 and 10, township 20 south, range 16 east, southeastern district of Louisiana, west of the Mississippi river. That of the defendants is designated on the government plat of survey made by G. F. Connelly, Deputy

United States Surveyor in 1838, as lots Nos. 1, 4, 5, and 7 of section 3; and 1, 4, 5, and 8 of section 9 same township and range.

The record shows that Newton Boley purchased these lots from the government of the United States in 1846. They were sold in his succession by the same description to Francois Viguerie in 1869. Viguerie caused them to be subdivided by V. Sulakowski, surveyor, about 1870 and sold out the land as subdivided between 1870 and 1880. This Sulakowski survey was lost without having been recorded. In the titles from Viguerie the phrase "by depth of survey or confirmation" is used for the first time. As the language is used for the first time in titles from Viguerie and the subdivision had been recently made by survey, it is our conclusion that the language refers to the Sulakowski survey and nothing more. The frontage on the bayou and the course to the rear which the Sulakowski subdivision took was not established on the trial, but as the government survey was made in 1838 and that of Sulakowski about 1870, only about 32 years had elapsed, and it is a reasonable conclusion that at the time of the Sulakowski survey the marks of the government survey and location of the rear limits of these lots and the located township line separating townships 20 and 19 south, range 16 east, were to be seen on trees, then standing on the banks of the bayou. The place where the township line crossed the bayou was almost surely definitely known and marked at that time, and relics no doubt then existed of the mounds so frequently spoken of in the government survey as having been raised on the prairie. It is a reasonable conclusion, there being no evidence to the contrary, that the rear limits of the Sulakowski survey stopped at the perpendicular line, established by the government survey, making the eastern limits of the ground surveyed harmonize with the adjoining government subdivisions in the same section. At the time of the Sulakowski survey, all the land to the east of these lots was public land, the property of the United States, and Sulakowski knew, that is, in the absence of any evidence to the contrary, he will be supposed to have known, that he could not extend Viguerie's rear limits beyond the limits proper to the government lot; that to do so was to unlawfully enter on government land.

We agree with the lower court, that under the facts of the present case defendants have no title nor possession under the phrase mentioned, to any land beyond the rear limits which the lots had, as located and formed by the government, which goes to make up the tracts of land which they each and respectively own.

There is much controversy about the re-marking of the township line which separates townships 20 and 19, range 16 east, undertaken by Lovell as an incident of the work he was commissioned by the court to perform, which was to re-mark the line which separates plaintiffs land from the land of the defendants.

Defendants in their brief vigorously assail the work done by Mr. Lovell in this respect, claiming that it does not harmonize with the government survey. The object and purpose of this suit is to have correctly re-marked the boundary limits between plaintiff's land and the adjoining lands of the defendants. Defendants' claim to ownership and possession to a depth of 40 arpents from the east bank of the bayou, has been held as not established and rejected. Their claim in that respect was the principal ground of controversy in the case. Defendants, as witnesses, and other witnesses called by them, do not claim that the Lovell survey, re-marking their rear limits, encroaches on their land, changes or disturbs their location or infringes on their possession, if it be that their area location and limits is the same as that fixed for lots 1, 4, 5, and 7 of section 3, and 1, 4, 5, and 8 of section 9, township 20 south, range 1 east, by the government survey.

It is not claimed by them as witnesses, nor through witnesses called by them, that the Lovell line re-marking the boundary limits between plaintiff's lands and their land impinges on the original lots as created and located by the government, which lots make up the land which they each and respectively own and possess. The upper line of lot 1 in section 3 is the township line. There is no complaint that lot 1 as located and limited by Lovell is different in any way from its location and as limited by the government. The township line is thereby re-marked, without injury, and without injury there is no ground for complaint against his survey.

Such being the situation, discussion of the line marked on map "one" run by him

from the letter "A" to the letter "C" would serve no useful purpose.

The judgment appealed from will for these reasons be affirmed.

Judgment affirmed.