HERGET, Judge.
This is an action in which plaintiffs seek reformation of an act of sale by which Mrs. Rósela Folse Lepine, the widow of Oscar Lepine, deeded to Olezime Champagne on May 24, 1926 a certain tract of land located in Lafourche Parish, Louisiana. Alternatively, plaintiff, Olezime Champagne, makes demand for ownership based on corporeal possession for more than thirty years. Plaintiffs were Olezime Champagne, the vendee in the deed of the property in dis-put and his mineral lessees, Sinclair Oil and Gas Company, Humble Oil and Refining Company and T. S. Stoneman. Upon appropriate motion and by order of Court the suit was dismissed as to T. S. Stoneman, reserving to Sinclair Oil and Gas Company his rights therein without prejudice to the rights of Olezime Champagne, Sinclair Oil and Gas Company and Humble Oil and Rer' fining Company.
Defendants are five of thirteen heirs of Mrs. Rósela Lepine, vendor, who inherited from her and own in indivisión a one-third interest in her estate. Other heirs of the said vendor consented to the act of reformation of -Mr. Champagne’s deed.
Several exceptions were urged by the defendants in the. lower Court which were referred to the merits by the Court. After trial of the issues that Court ruled on the merits in favor of petitioners-appellees and against defendants-appellants and ordered reformation of the deed as prayed for. From this judgment defendants appealed to this Court. In their briefs and argument defendants abandoned all exceptions except as to the alternative demand of ownership based on thirty years’ prescription.
The deed sought to be reformed is recorded in the office of the Clerk of Court and Recorder of Lafourche Parish, Louisiana in Conveyance Book 58, Folio 17, Entry No. 30645 and describes the property as follows:
“A certain tract of land, situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche, at about twelve miles below the Town of Thibodaux, measuring One (1) arpent front, between parallel lines, by the depth of survey or about eight arpents, bounded on the upper side by the land of the vendress this day sold to Paul and Olesie Champagne, and on the lower side by other land of the vendress, the one arpent front herein sold being the upper sixth arpent of the Florae Plantation; together with all the buildings and improvements thereon and all the rights and privileges thereto belonging or appertaining." (emphasis by the court.)
“Being the same property acquired by the vendress at the Succession sale of F. Alexander Lepine, at public auction. (See C. B. No. 55, Page 245).”
*755 In respect to the demand for reformation of the deed, our Supreme Court in the case of Agurs v. Holt et al., 232 La. 1026, 95 So.2d 644, at page 645 concluded :
“The law respecting reformation of instruments is well settled here and elsewhere. It is an equitable remedy and lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. See Ober v. Williams, 213 La. 568, 35 So.2d 219, citing 45 Am.Jur. Sec. 45 et seq. It is a personal action, even when applied to real estate (see Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183), in which the burden is on the one seeking reformation to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Waller v. Colvin, 151 La. 765, 92 So. 328; Smith v. Chappel [Chappell], 177 La. 311, 148 So. 242; Fair v. Williams, 187 La. 953, 175 So. 631 and Southwest Gas Producing Co. v. Hattie Brothers, 230 La. 339, 88 So.2d 649. Hence, it follows that the instant case presents for determination mainly a question of fact, bearing in mind that plaintiff carries the burden of proof and that the evidence of mutual error must be strong and convincing.”
Plaintiffs-appellees contend that the deed sought to be reformed was in error in that the notary who prepared same failed to type “y” on the word “eight”, thus reading “eight” in the deed instead of “eighty”. Defendants-appellants, on the other hand, contend that the question of fact presented for resolution is the proper depth of the land sold and that in resolving the question it is imperative that the meaning of the phrase “depth of survey” in the act must be judicially determined.
Mr. Harvey Peltier, who was the notary before whom the deed in question was passed, was called as a witness by plaintiffs. The vendor, Mrs. Rósela Folse Le-pine, was the grandmother of Mr. Pel-tier’s wife. In response to the, question propounded to him as to the instructions given him for the preparation of the instrument, he testified at pages 88 and 89:
“A. Mrs. Oscar Lepine, the lady who sold this property, was my wife’s grandmother and she authorized me to try to sell several lots or several tracts of land measuring one by eighty and two by eighty. She authorized me to make these sales at a price, as I recall it, of $2,500.00 an acre front by eighty, and I, as her agent, prepared and made several sales in that general neighborhood, one by eighty and two by eighty, all for the price and sum of $2500.00 an acre front, and as I stated a moment ago, I was my own typist and when I prepared this sale, I just neglected to put the ‘y’ on the eight although I should have. It was my error. Subsequently, Mr. Champagne took possession of the property. I bought the remaining property from the Lepines and I farmed that property, these several-men having bought it, including Mr. Olezime Champagne, being one of my neighbors, and they cultivated the property to the eighty arpent line. We always recognized them as — well, that’s the story. In other words, she authorized me1 to make the sale one by eighty and I intended to sell one by eighty and I know the man intended to buy one by eighty.
“By Mr. Lanier:
“Q. Mr. Peltier, will you look at the price on that particular— A. It’s $2500.00.
“Q. $2500.00. In other words, that was the price of the tract one by eighty. Is that correct? A. One by eighty. That’s what I sold the other tracts for. $2500.00 for one by eighty.”
The uncontradicted testimony of Mr. Pel-tier was that he made all negotiations and *756 arrangements for the sale of this property-belonging to his wife’s grandmother, including the dimension and price to be paid therefor. He not only negotiated the sale as agent for Mrs. Lepine but personally typed the deed and acted as notary. Therefore, his testimony as to the intention of the vendor in deed to convey a depth of eighty arpents is, without question, the intent on her part. He is corroborated in his testimony that the sale to Champagne was to be one arpent front by a depth of eighty arpents by the proof that at or about the same time he made sales of adjacent similar property of Mrs. Lepine on the basis of $2,500 per one arpent front by eighty ar-pents depth. Therefore, it is abundantly clear that the failure in the act of sale sought to be reformed to bear the verbiage “eighty” resulted only from the fact that he neglected to put the “y” on the “eight.”
Plaintiff, Mr. Olezime Champagne, who was called as a witness testified in French —he being unable to read or write the English language — the depth of the property was eighty arpents. Though the transcription of his testimony in the record is in English and we do not have his testimony in French, we observe in that language the words “eight” and “eighty” are not so similar as those words in the English language, the French translation for “eight” being “huit” and “eighty” being “quatre vingt”. Thus there was little likelihood that he could have misunderstood the represented dimensions of the property.
We next come to the contention of appellants that this Court should consider the description contained in the questioned deed as a whole, and in doing so attribute to the phrase the meaning “depth of governmental surveys” as decreed in Louisiana Appeals in the cases of Blanchard v. Bourg, 8 So.2d 807; Buckley v. Thibodeaux et al., La.App., 163 So. 172, 173 and Buckley v. Dumond. (Same v. Theriot), La.App., 156 So. 784, 789. Appellants, on the trial of the case introduced in evidence the plats of the original governmental survey and the surveyor’s field notes in connection therewith, which exhibits show that the governmental sections in which the tract involved is located — Sections 35 and 55, T.15 S.R.18 E. —have a depth of forty arpents and thirteen arpents, respectively, or a total of fifty three arpents in depth from Bayou La-fourche; Section 55 being in the rear of and the double concession to Section 35. Accordingly, appellants contend the depth of survey in this deed means fifty three ar-pents from Bayou Lafourche or forty ar-pents from Bayou Lafourche and there is no basis for supplying in the corrected deed eighty arpents as decreed by the Trial Court. The cases relied on by appellants are inapposite to the factual situation presented in this case. It is clear from a reading of the case of Buckley v. Thibodeaux, supra, with no other evidence on which to base our conclusions, we decreed that “depth of survey” as used in the deed under consideration had reference only to the original French or Spanish grant by which plaintiff’s ancestors in title acquired and could not conflict with the limits of adjoining lands as fixed by governmental survey. There we said:
“ * * * The prairie land claimed by defendants in this case is the same character of land the possession of which was in dispute in the case of Buckley v. Dumond, and Buckley v. Theriot, La.App., 156 So. 784, 789. In the case mentioned, the title of Theriot contained the phrase, ‘by depth of survey,’ found in the titles advanced in the present case, by Emile Thibodeaux et al. In acting on the claim of Ther-iot, we said: ‘The lower court in a carefully prepared opinion considered this term, “by depth of survey,” and gives it as his conclusion that Theriot’s land is likely situated in a French or Spanish grant, and that such a vague and indefinite expanse must be limited and confined to the grant in which the land is located and cannot without proof be considered as calling for an extent of land, which would conflict with the limits of adjoining lands, ac *757 quired from the United States and located and surveyed by surveyors, acting under the authority of the national government, as is the case with the limits called for by the title of the plaintiff. We agree with this conclusion and hold, as did the lower court, that under the evidence there is no conflict between plaintiff’s limits and those of Theriot under the title which he adduced.’ ”
In the case of Blanchard v. Bourg, 8 So.2d at page 809, supra, we said:
“We are at a loss to understand on what ground the plaintiffs predicate their meaning of the phrase ‘depth of survey’ under which they would extend the depth of their properties to a line forty arpents from Bayou DuLarge on which they front. They produced no authority other than their statements that their deceased parents or people in general always told them that that was what was understood by the phrase. In these particular cases no such construction could possibly be given to it however, for the very good reason that at the time it was first used in the description of any of these properties, had the depth of any been extended forty arpents from Bayou DuLarge, there would have been an infringement upon the government limits of certain sections of land all of which are shown to have been at that time part of the public domain.
“The land comprised in the plaintiffs’ titles were formerly owned by Francois Viguerie who had acquired from Newton Boley, the patentee. Viguerie at one time had the lands surveyed and subdivided by a surveyor named Sula-koski. The lots were plotted out on a map or plat which, however, was never recorded and apparently has long since been lost or misplaced. All of this is pointed out in the opinion of this court handed down in the former boundary suit of Buckley v. Thibodeaux et al., 163 So. 172, in which we stated our conclusion that as the phrase ‘by depth of survey’ was used for the first time in the titles emanating from Viguerie shortly after the survey by Sulakoski, it referred to that survey and nothing more. The learned district judge elaborates on the matter in the opinion he has written in the present suit and again expresses his conviction, with which we agree, that in these cases there is no authority in law or in fact to apply to the interpretation contended for by these plaintiffs that by that phrase it was meant that their properties were to have a depth of forty arpents from the banks of Bayou Du-Large.”
We, however, are not required to resort to conjecture as to the meaning of “depth of survey” as found in the deed under consideration for the reason that Mr. Harvey Peltier — whom we have previously identified as the one who negotiated the sale, personally typed the instrument, executed it as notary public and moreover the alter ego of Mrs. Rósela Folse Lepine, the vendor,— testified that it was his intention and thereby the intention of Mrs. Lepine to sell a tract to Olezime Champagne of one arpent front by eighty arpents depth for $2,500 and further testifying on pages 91 and 92 of the transcript, we find the following responses to these questions propounded to Mr. Peltier:
“Q. How did you reach this determination of a depth of eighty arpents as you say it was your intention to describe? A. It was my understanding at the time that the property had a depth of eighty acres and we recited in the deed that it was to the depth of survey or eighty acres.
“Q. How did you come to that understanding? A. I was told that. That’s the only way I would have known it. I haven’t had it surveyed. I may have checked the records. That phase of it I don’t remember.
*758 “Q. What did you understand when you wrote in the description ‘by a depth of survey’? A. Well, I thought she was selling to the eighty acres, which was the depth of survey. That’s what I concluded.
“Q. In other words, you assumed that the depth of survey was eighty acres? A. Yes.
“Q. There was no survey of this property made prior to the sale? A. I’m not familiar with whether they had one or not.
“Q. When you say depth of survey you meant, I understand, the governmental survey of the original land grants? A. I think the other property had those descriptions and I probably copied that from them. I don’t remember the exact reason for the use of that language.
“Q. Can you tell us which survey you referred to when you said in the deed ‘by a depth of survey’? A. I didn’t refer to any particular one. That was language that was used probably in another description. I thought-she was selling eighty acres, which I thought was to the depth of survey.
“Q. How did you come to that determination then, Mr. Peltier, that she was selling eighty acres or eighty ar-pents rather? A. None by — Mrs. Le-pine and the family told me it had— and Dr. Ayo was her son-in-law, and he’s one of those who told me it had eighty acres or eighty arpents.”
Further, when asked did he have any interest in the outcome of the lawsuit, Mr. Peltier testified:
“A. None whatever, except to be honest and honorable about it. I recommended to the members of my wife’s family that they carry out the intention of Mrs. Lepine by giving a quit claim, which they did.”
Thus, it is'the testimony of Mr. Peltier that in the'use of the words “depth of survey” this phraseology was placed in the deed not to identify the property sold with the governmental survey nor any survey known to him but that the phrase was used because he had been told that such was the depth thereunto belonging of the one arpent front sold by Mrs. Lepine to Olezime Champagne. In other words, the depth of eighty arpents or the depth of survey, to him, had synonymous meaning.
There was offered in evidence as “P-7” a sale by which the heirs of Mr. and Mrs. Oscar Lepine (Mrs. Rósela Lepine) including the defendants-appellants, sold to Mr. Harvey Peltier “ * * * all of the real estate which the vendors herein acquired by inheritance from their grandfather and grandmother, * * * ” and in that act of sale reference was made to property previously severed from the larger tract and one of the excepted tracts, which is the subject of this litigation, was described as:
“(e) A tract of land measuring one (1) arpent front between parallel lines by depth of survey or about eighty ar-pents; being the same property which Mrs. Rósela Folse Lepine, widow of Oscar Lepine, sold to Olesime Champagne on May 24, 1926. (See C.B. 58, p. 17)”
For these reasons, we are of the opinion that the reformation of the deed by which Mrs. Rósela Folse Lepine sold to Olezime Champagne on May 24, 1926 in Conveyance Book 58, page 17, of the records in the Clerk of Court and Recorder’s Office, so as to supply the word “eighty” in lieu of the word “eight” as decreed by the Trial Court is correct.
In view of our disposition of the demand for reformation of the deed, it becomes unnecessary to pass upon the alternative plea of prescriptive possession.
For these reasons the judgment is affirmed.
Judgment affirmed.